UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BANK OF AMERICA, N.A.,** <br> *Plaintiff,* <br> v. <br><br> **THIRD AVENUE IMAGING LLC**, a New York limited liability company, **UNIQUE THIRD AVE LLC**, a New York limited liability company, **UNIQUE IMAGING SERVICES LLC**, a New York limited liability company, **DISTINGUISHED DIAGNOSTIC IMAGING, P.C.,** a New York professional corporation, and **JOEL REISMAN,** an individual**,** <br> *Defendants.* | Case No. 21-cv-5201 <br><br> **VERIFIED COMPLAINT** |

Plaintiff, Bank of America, N.A., by and through its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, by way of Complaint against defendants Third Avenue Imaging LLC, Unique Third Ave LLC, Unique Imaging Services LLC, Distinguished Diagnostic Imaging, P.C., and Joel Reisman, states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a) in that all of the defendants reside in the Southern District of New York.

## THE PARTIES

3. Bank of America, N.A. (the "***Bank***") is a national banking association chartered under the laws of the United States of America with its main office and principal place of

business located in Charlotte, North Carolina as designated in its Articles of Association, and as such, it is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348.

4. Upon information and belief, defendant Third Avenue Imaging LLC ("*TAI*"), is a limited liability company, which maintains a place of business at 282 Mountainview Drive, Unit 201, Monroe, NY 10950.

5. Upon information and belief, defendant Unique Third Ave LLC ("*UTA*"), is a limited liability company, which maintains a place of business at 282 Mountainview Drive, Unit 201, Monroe, NY 10950.

6. Upon information and belief, defendant Unique Imaging Services LLC ("*UIS*"), is a limited liability company, which maintains a place of business at 282 Mountainview Drive, Unit 201, Monroe, NY 10950.

7. Upon information and belief, defendant Distinguished Diagnostic Imaging, P.C. ("*DDI*") is professional corporation, which maintains a place of business at 11 Brittany Court, Chappaqua, NY 10514.

8. Upon information and belief, defendant Joel Reisman ("*Reisman*") is and, at all relevant times, was a natural person who is a citizen of the State of New York and who resides at 282 Mountainview Drive, Unit 201, Monroe, NY 10950.

## NATURE OF THE ACTION

9. This is an action by the Bank as a commercial lender to enforce its rights in connection with a certain loan agreement, security agreement, and guaranty agreements between the Bank and the defendants, pursuant to which the Bank provided a term loan in the principal amount of $5,240,000.00, the aforementioned loan documents were defaulted on by the

defendants, and the principal sum of $2,414,835.50 together with interest continuing to accrue, which remains due and owing to the Bank.

## FACTUAL ALLEGATIONS

**The Loan Agreement**

10. On or about February 28, 2017, the Bank entered into a Loan Agreement with defendant TAI (as at any time amended, the "***Loan Agreement***"), pursuant to which the Bank agreed to, *inter alia*, make available to defendant TAI a term loan in the amount of $5,240,000.00 (the "***Loan***") to be repaid in monthly installments commencing on October 1, 2017 and ending on March 1, 2021, at which time defendant TAI would repay all of the remaining principal balance, plus interest and other charges due thereunder. (A copy of the Loan Agreement is annexed hereto as Exhibit "1".)

11. The Loan Agreement provides that in the event of a default, the Bank could declare TAI in default, stop making any additional credit available to TAI, and require TAI to repay its entire debt immediately.

12. The Loan Agreement also provides, *inter alia*, that: "Upon the occurrence of any default or after maturity . . . all amounts outstanding under this Agreement, including any unpaid interest, fees, or costs, will at the option of the Bank bear interest at a rate which is 6.0 percentage point(s) higher that the rate of interest otherwise provided under this Agreement."

13. On or about February 28, 2017, as collateral security for the prompt and complete payment and performance of all of TAI's then or thereafter-existing debts, obligations, and liabilities to the Bank (the "***Obligations***"), defendants TAI, UTA, UIS, and Reisman (collectively, the "***Obligors***") executed and delivered to the Bank a certain Security Agreement

3

(collectively, as at any time amended, the "*Security Agreement*"). (A copy of the Security Agreement is annexed hereto as Exhibit "2".)

14. Pursuant to the terms of the Security Agreement, the Obligors granted to the Bank a first priority blanket security interest upon all of their assets, including the following property (collectively, the "*Collateral*"):

    (a)    All accounts, contract rights, chattel paper, instruments, deposit accounts; letter of credit rights, payment intangibles and general intangibles, related thereto; and all returned or repossessed goods which, on sale or lease, resulted in an account;
    (b)    All inventory;
    (c)    All equipment and fixtures now owned or hereafter acquired;
    (d)    All of the deposit accounts with the Bank;
    (e)    All instruments, chattel paper, documents, certificates of deposit, securities and investment property of every type;
    (f)    All general intangibles;
    (g)    All negotiable and nonnegotiable documents of title covering any collateral;
    (h)    All accessions and attachments and other additions to the collateral;
    (i)    All substitutes or replacements for any collateral; and
    (p)    All books and records pertaining to any Collateral whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory.

15. In addition, on February 28, 2017, as additional collateral security for the repayment of the Obligations, Continuing and Unconditional Guaranties were executed and granted in favor of the Bank (as at any time amended, the "*Guaranties,*" together with the Loan Agreement and the Security Agreement and related loan documents, the "*Loan Documents*"), by each of the defendants UTA, UIS, DDI, and Reisman (collectively, the "*Guarantors*"), pursuant to which each of the Guarantors absolutely and unconditionally guaranteed the payment to or performance for the Bank of the Obligations when due, including any attorneys' fees and costs incurred by the Bank in collecting any sums due to it. (Copies of the Guaranties are collectively annexed hereto as Exhibit "3".)

16. The Guaranties each provide that upon the occurrence of an event of default under the Loan Agreement or any document executed in connection therewith, the Bank would be entitled to immediately enforce the Guaranties against the Guarantors, including, but not limited to declaring the indebtedness to be immediately due and payable to the Bank.

**The Defaults**

17. Defendant TAI defaulted under the Loan Agreement by failing to make monthly payments due as a result of, *inter alia*, a failure to make monthly payments due and owing to the Bank on September 1, 2019, October 1, 2019, and November 1, 2019 (collectively, the "***Defaults***").

18. As a result of the Defaults under the Loan Documents, the Bank sent written notice to the Obligors on November 19, 2019 (the "***Default Notice***"), pursuant to which the Bank, *inter alia,* advised the Obligors of the Defaults and the Bank's election to accelerate the Loan and declare the full amount of the Obligations due under the Loan Documents to be immediately due and payable to the Bank. (A copy of the Default Notice is annexed hereto as Exhibit "4".)

19. Based upon the Defaults under the Loan Documents, the Obligors also defaulted under the terms of a separate and unrelated Loan Agreement dated February 28, 2017 between UTA and the Bank, in the original principal amount of $4,960,000.00 (the "***UTA Loan***")[1].

---

[1] The UTA Loan is referenced in the Default Notice and the outstanding principal balance under the UTA loan is, as of April 8, 2021 in the amount of $4,511,904.00. The outstanding obligations due under the UTA Loan are not being pursued in this action. However, the Bank reserves its rights and remedies to pursue the obligations due and owing under the UTA Loan in a separate action.

10869303v.8

20. The Bank subsequently engaged in discussions with the Obligors and their representatives to address the Defaults and the outstanding Obligations due and owing to the Bank.

21. Despite these efforts at a resolution, the Obligors failed to enter into a proposed Forbearance Agreement offered by the Bank, made only partial payments to the Bank against the full amount of the accelerated Obligations, and the balance of the Obligations under the Loan remain due and payable in full to the Bank.

22. By letter dated July 17, 2020 (the "*Turnover Demand*"), the Bank, through its counsel, also demanded turnover of the Collateral by the Obligors to the Bank. Despite the issuance of the Turnover Demand, the Obligors have not turned over the Collateral to the Bank. (A copy of the July 17, 2020 Turnover Demand is annexed as Exhibit "5").

23. As of April 8, 2021, the principal amount outstanding under the Loan is in the amount of $2,414,835.50 together with interest, fees, and other charges, which are continuing to accrue.

24. Despite the Default Notice and the Turnover Demand, the Obligations remain due and payable to the Bank and the Obligors have not turned over the Collateral to the Bank.

**FIRST CLAIM**
(Breach of Contract)

25. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

26. As set forth above, defendant TAI defaulted under the terms of the Loan Agreement.

27. As a result of the Defaults, the Bank demanded and is entitled to immediate payment in full of all sums due under the Loan Agreement.

10869303v.8

28. The Bank has performed all of its obligations under the Loan Agreement and the Security Agreement.

29. The Loan Agreement provides that in the event of a default thereunder, defendant TAI would be liable for all legal fees, costs and expenses incurred by the Bank in connection with the enforcement of its remedies against defendant TAI.

30. There is due and owing to the Bank pursuant to the Loan Agreement the principal sum of $2,414,835.50 (as of April 8, 2021), plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Agreement.

31. Accordingly, the Bank is entitled to a money judgment against defendant TAI in the principal sum of $2,414,835.50 (as of April 8, 2021), plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Agreement.

**SECOND CLAIM**
(Foreclosure of Security Interest)

32. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

33. To secure its interest in the Collateral, and in order to notify others of its interest in and to the Collateral, the Bank filed UCC-1 Financing Statements with the Secretary of State of the State of New York on March 6, 2017 under Filing Number: 201703060108445. (A copy of the UCC-1 is annexed hereto as Exhibit "6").

34. As a result of the Defaults by defendant TAI under the Loan Agreement, the Obligors also defaulted under the terms of the Security Agreement, entitling the Bank to, *inter alia*: (a) take possession of the Collateral; (b) require defendant TAI to assemble the Collateral

7

and make same available to the Bank at a place designated by the Bank; and/or, (c) dispose of the Collateral by selling or leasing same, and apply the proceeds thereof to the Obligations owed to the Bank.

35. Accordingly, the Bank is entitled to a judgment foreclosing upon its security interest in the Collateral, awarding to the Bank immediate possession of the Collateral, and permitting the Bank to dispose of same and apply the proceeds thereof to the obligations and liabilities of defendant TAI in accordance with Article Nine of the Uniform Commercial Code.

### THIRD CLAIM
(Replevin)

36. The Bank refers to and realleges each of the foregoing allegations of this Complaint as it more fully set forth herein.

37. As set forth above, defendant TAI defaulted under the terms of the Loan Agreement, which also constitutes a default by the Obligors under the Security Agreement.

38. Pursuant to the terms of the Security Agreement, upon the occurrence of an event of default thereunder, the Bank is entitled to, *inter alia*, take possession of the Collateral.

39. Upon information and belief, the Collateral is situated at the premises of, and is in the possession of defendant TAI at its business location at 282 Mountainview Road, Monroe, NY 10950.

40. The Obligors have failed and refused to return the Collateral to the Bank, as required under the Security Agreement, and have wrongfully continued to maintain possession of the same in violation of the Bank's right to possession of the Collateral.

41. The items subject to replevin are more specifically described as the Collateral.

42. Accordingly, the Bank is entitled to a judgment of possession of the Collateral against the Obligors.

10869303v.8

## FOURTH CLAIM
(Conversion)

43. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

44. Upon information and belief, the Obligors have continued to use the Collateral in their business despite the defaults, despite their obligations to return the Collateral, and despite their failure to make payment to the Bank therefor.

45. As set forth above, the Obligors have: (i) defaulted under the terms of the Loan Agreement and the Security Agreement, (ii) failed to make payment to the Bank of the full amount due and owing to the Bank under the Loan Documents, and (iii) intentionally refused, and wrongfully continues to refuse, to deliver possession of the Collateral to the Bank in violation of the Bank's rights to possession of the Collateral.

46. As a result of the failure of the Obligors to turn over the Collateral to the Bank and their continued intentional, illegal usage and wrongful conversion of the Collateral, the Bank has suffered damages in an amount to be determined at trial.

## FIFTH CLAIM
(Unjust Enrichment)

47. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

48. Upon information and belief, the Obligors have continued to use the Collateral in their business despite the defaults and their lack of any right to possess or use same.

49. Upon information and belief, the Obligors have realized revenues from their illegal possession and use of the Collateral and have been unjustly enriched to the detriment of the Bank: (i) in the amount of the value of the Collateral and (ii) any income the Obligors have realized or received due to their illegal possession of the Collateral.

9

50. Accordingly, the Bank is entitled to a money judgment against the Obligors in an amount to be determined at trial.

**SIXTH CLAIM**
(Breach of Guaranties)

51. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

52. As set forth above, defendant TAI has defaulted under the terms of the Loan Agreement.

53. As a result of defendant TAI's defaults under the Loan Agreement, the Guarantors are liable to the Bank for the Obligations due and owing pursuant to the Guaranties and the Loan Documents, but the Guarantors have failed to make payment to the Bank of the full amount of the outstanding Obligations.

54. The Bank reasonably relied upon the Guaranties in advancing sums to defendant TAI pursuant to the terms of the Loan Agreement.

55. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the Guaranties.

56. There is due and owing to the Bank pursuant to the Guaranties the principal sum of $2,414,835.50 (as of April 8, 2021), plus accrued and accruing interest and default rate interest, late charges, prepayment fees, contractual costs, attorneys' fees and all other charges due to the Bank.

57. Accordingly, the Bank is entitled to a money judgment against the Guarantors in the principal amount of $2,414,835.50 (as of April 8, 2021), plus accrued and accruing interest, default rate interest, late charges, prepayment fees, contractual costs, attorneys' fees and all other charges due to the Bank.

**WHEREFORE**, plaintiff Bank of America, N.A. respectfully demands judgment on each of its claims against defendants Third Avenue Imaging LLC, Unique Third Ave LLC, Unique Imaging Services LLC, Distinguished Diagnostic Imaging, P.C., and Joel Reisman together with such other and further relief which as to this Court seems just, proper, and equitable.

Dated: New York, New York
June 8, 2021

>Respectfully submitted,
>
>WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
>
>By: /s/Michael Adam Samuels
>Michael Adam Samuels
>Daniel F. Flores
>150 E. 42nd Street
>New York, NY 10017
>Telephone: (212) 490-3000
>Direct: (212) 915-5735
>Facsimile: (212) 490-3038
>Email: michael.samuels@wilsonelser.com
>*Attorneys for Plaintiff Bank of America, N.A.*

## VERIFYING AFFIDAVIT

STATE OF CONNECTICUT )
) ss. West Hartford
COUNTY OF HARTFORD )

MATTHEW J. HYLAND, of full age, being duly sworn, upon his oath, deposes and says:

1. I am a Senior Vice President of Bank of America, N.A., Plaintiff in this action. I am in charge of the loan to the defendant Third Avenue Imaging, LLC, and related parties, and I am fully familiar with the facts of this case.

2. I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, from public records, the records of Plaintiff or information provided to Plaintiff by members and employees of defendants Third Avenue Imaging LLC, Unique Third Ave LLC, Unique Imaging Services LLC, Distinguished Diagnostic Imaging, P.C., and Joel Reisman.

_____
MATTHEW J. HYLAND

Sworn and subscribed to before me
this 8th day of ~~May~~ 2021
June

_____
NOTARY PUBLIC

JOHNOY R. NELSON
Notary Public, State of Connecticut
My Commission Expires Sep. 30, 2024

12

10869303v.8