UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BANK OF AMERICA, N.A., <br><br> *Plaintiff,* <br><br> v. <br><br> THIRD AVENUE IMAGING LLC, a New York limited liability company, UNIQUE THIRD AVE LLC, a New York limited liability company, UNIQUE IMAGING SERVICES LLC, a New York limited liability company, DISTINGUISHED DIAGNOSTIC IMAGING, P.C., a New York professional corporation, and JOEL REISMAN, an individual, <br><br> *Defendants.* | Case No. 21-cv-5201-VB <br><br> AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

STATE OF CONNECTICUT  )
                                            ) ss.
COUNTY OF HARTFORD  )

**MATTHEW J. HYLAND**, of full age, being duly sworn, upon his oath, deposes and says:

1. I am a Senior Vice President with the Plaintiff Bank of America, N.A. ("*BofA*"), which commenced this action pursuant to a Verified Complaint filed on June 11, 2021 (as amended on July 15, 2022, the "*Amended Verified Complaint*"). I have personal knowledge of the facts set forth herein, except for matters stated on information and belief, and as to those matters, I believe the information to be true and correct based upon a review of the business records maintained by BofA. If called as a witness, I could and would competently testify to the matters set forth herein.

2. I submit this Affidavit in support of BofA's motion (the "*Motion*") for an order (a) pursuant to Fed. R. Civ. P. 56, granting summary judgment in favor of BofA on the First, Second and Sixth Claims in its Amended Verified Complaint as against defendants Third Avenue Imaging LLC ("*TAI*"), Unique Third Ave LLC ("*UTA*"), Unique Imaging Services LLC ("*UIS*"), and Joel

1

Reisman ("*Reisman*," collectively with TAI, UTA, UIS, the "*Reisman and LLC Defendants*"), and Distinguished Diagnostic Imaging, P.C. ("*DDI*," together with the Reisman and LLC Defendants, the "*Defendants*"); (b) awarding to BofA such other and further relief this Court may deem, just, proper, and equitable.

**The Closing of the Loan Agreement**

3. On February 28, 2017[1], BofA entered into a Loan Agreement with defendant TAI (as at any time amended, the "*Loan Agreement*"), pursuant to which BofA agreed to, *inter alia*, make available to defendant TAI a term loan in the amount of $5,240,000.00 (the "*Loan*") to be repaid in monthly installments commencing on October 1, 2017 and ending on March 1, 2021, at which time defendant TAI would repay all of the remaining principal balance, plus interest and other charges due thereunder. (A copy of the Loan Agreement is annexed to the Amended Verified Complaint as Exhibit "1".)

4. As collateral security for the prompt and complete payment and performance of all of TAI's then or thereafter-existing debts, obligations, and liabilities to BofA (the "*Obligations*"), defendants TAI, UTA, UIS, DDI, and Reisman (each a "*Obligor*" and collectively, the "*Obligors*") executed and delivered to BofA a certain Security Agreement (collectively, as at any time amended, the "*Security Agreement*"). (A copy of the Security Agreement is annexed to the Amended Verified Complaint as Exhibit "2".)

---

[1] On the same date of the closing on the Loan, BofA and UTA, as well as the other defendants TAI, UIS, DDI and Reisman, also entered into a separate mortgage term loan in the principal amount of $4,960,000.00 for the purchase of certain commercial real property by UTA located at 2772, 2774, 2777, 2779 and 2781 Third Avenue, Bronx, New York (the "*UTA Loan*"). The UTA mortgage loan is not the subject of this action.

5. Pursuant to the terms of the Security Agreement, the Obligors granted to the Bank a first priority blanket security interest upon all of their assets, including the following property (collectively, the "*Collateral*"):

(a) All accounts, contract rights, chattel paper, instruments, deposit accounts; letter of credit rights, payment intangibles and general intangibles, related thereto; and all returned or repossessed goods which, on sale or lease, resulted in an account;
(b) All inventory;
(c) All equipment and fixtures now owned or hereafter acquired;
(d) All of the deposit accounts with BofA;
(e) All instruments, chattel paper, documents, certificates of deposit, securities and investment property of every type;
(f) All general intangibles;
(g) All negotiable and nonnegotiable documents of title covering any collateral;
(h) All accessions and attachments and other additions to the collateral;
(i) All substitutes or replacements for any collateral; and
(p) All books and records pertaining to any Collateral whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory.

6. As additional collateral security for the repayment of the Obligations, Continuing and Unconditional Guaranties were executed and granted in favor of BofA (as at any time amended, the "*Guaranties*," together with the Loan Agreement and the Security Agreement and related loan documents, the "*Loan Documents*"), by each of the defendants UTA, UIS, DDI, and Reisman (collectively, the "*Guarantors*"), pursuant to which each of the Guarantors absolutely and unconditionally guaranteed the payment to or performance for BofA of the Obligations when due, including any attorneys' fees and costs incurred by BofA in collecting any sums due to it. (Copies of the Guaranties are collectively annexed to the Amended Verified Complaint as Exhibit "3".)

7. In connection with the closing of the Loan, BofA received an opinion letter from Stanley A. Schutzman, Esq. dated February 28, 2017, then counsel to the Defendants, which made

representations for the benefit of BofA and which was required in furtherance of the closing of the Loan (the "*Schutzman Opinion Letter*"). (A true and correct copy of the Schutzman Opinion Letter is annexed hereto as **Exhibit "A"**).

8. The Schutzman Opinion Letter represents on page 2, paragraph 7 that:

"Each Obligor has full power, authority, and legal right to execute, deliver, and comply with each of the Loan Documents executed by them, and all actions of each Obligor and other authorizations necessary or appropriate for the execution and delivery of and compliance with the Loan Documents have been taken or obtained, and the Loan Documents constitute the valid and legally binding obligations of Obligors enforceable against them in accordance with their respective terms." [Capitalized Terms are defined in the Schutzman Opinion Letter]. (See Exhibit "A," p. 2, ¶ 7).

9. At the time of the commencement of this action, BofA was not aware of any potential dispute with respect to the authorizations provided to BofA by the Defendants in connection with the closing of the Loan.

10. During the course of discovery in response to the document demands received from the defendant DDI, a diligent and good faith search was undertaken of the files maintained by BofA to locate the corporate resolution received by BofA authorizing Reisman to act as the "authorized signatory" of DDI and to enter into a guaranty and related security agreement with respect to the Loan Documents on behalf of DDI.

11. As a result of this search, the deponent located a copy of the Resolutions Authorizing Execution of Guaranty (Corporation) dated February 28, 2017 (the "*DDI/TAI Loan Resolution*") by the defendant DDI, which was executed by Joel Reisman, with the signature block for John Rigney, MD, President left blank (the "*Reisman Executed DDI/TAI Loan Resolution*"). (A true and correct copy of the "*Reisman Executed DDI/TAI Loan Resolution*" is annexed hereto as **Exhibit "B"**).

4

12. The Reisman Executed DDI/TAI Loan Resolution authorizes Reisman as the "Authorized Signatory" of DDI, to act on behalf of the defendant DDI in connection with the execution of the Loan Documents and, specifically, to execute and deliver a guaranty of the Obligations to the Bank together with any and all security agreements.

13. After completing its search in good faith, BofA was not able locate in its loan files a fully executed copy of the DDI/TAI Loan Resolution signed by both Reisman and Rigney and, upon information and belief, such document was lost and could not be produced by BofA[2] during discovery.

**The Loan Relationship with the Defendants**

14. During the course of the loan relationship between BofA and the Defendants, as required under the Loan Documents, Reisman has routinely provided to BofA, on behalf of all of the Defendants, including the defendant DDI, copies of relevant financial statements, tax returns, and other financial information.

15. On February 28, 2017, in addition to the Guaranties and Security Agreement, the defendant UIS, as assignor, executed in favor of BofA, as assignee, a certain Collateral Assignment of License Agreement dated as of February 28, 2017 (the "*Collateral Assignment*"), which attached as Exhibit A thereto, a certain Turnkey License Agreement dated March 4, 2005 between defendant UIS and defendant DDI (the "*DDI Turnkey Agreement*"). (A true and correct copy of the Collateral Assignment[3] together with a copy of the DDI Turnkey Agreement are annexed hereto as **Exhibit "C"**).

---

[2] Upon information and belief, a fully executed version of the DDI/TAI Loan Resolution was subsequently received by BofA's counsel in discovery from The Russell Friedman Law Group, LLP, the successor law firm to Rigney's deceased counsel, Russell Friedman.
[3] Upon information and belief, after a diligent search, a copy of the Collateral Assignment with Reisman's signature was located in BofA's loan files, but Rigney's signature could not be located in BofA's loan files and therefore was

5

16. Pursuant to the terms of the DDI Turnkey Agreement, defendant UIS licensed to defendant DDI the equipment, premises, administrative services, and essential office services for defendant DDI to operate a radiology practice located in the Bronx, NY. In return, defendant DDI, pursuant to the fee schedule set forth in Exhibit A of the DDI Turnkey Agreement, agreed to pay UIS monthly fees of $502,000.00.

17. The Collateral Assignment and DDI Turnkey Agreement comprise a component of BofA's collateral securing the outstanding Obligations under the Loan Documents.

**Defaults under the Loan Documents**

18. The defendant TAI defaulted under the Loan Agreement by failing to make monthly payments due as a result of, *inter alia*, a failure to make monthly payments due and owing to the BofA on September 1, 2019, October 1, 2019, and November 1, 2019 (collectively, the "***Defaults***").

19. As a result of the Defaults under the Loan Documents, BofA sent written notice to the Obligors on November 19, 2019 (the "***Default Notice[4]***"), pursuant to which BofA, *inter alia*, advised the Obligors of the Defaults and BofA's election to accelerate the Loan and declare the full amount of the Obligations due under the Loan Documents to be immediately due and payable to BofA. (A copy of the Default Notice is annexed to the Amended Verified Complaint as Exhibit "4".)

20. BofA subsequently engaged in discussions with the Obligors and their representatives to address the Defaults and the outstanding Obligations due and owing to BofA.

---

not produced by BofA in discovery; however, a copy of Rigney's signature page to the Collateral Assignment was subsequently produced in discovery by counsel to the Reisman and LLC Defendants.
[4] Based upon the Defaults under the Loan Documents, the Obligors also defaulted under the terms of the UTA Loan.

21. Despite these efforts at a resolution, the Obligors failed to enter into a proposed Forbearance Agreement offered by BofA, made only partial payments to BofA against the full amount of the accelerated Obligations, and the balance of the Obligations under the Loan remain due and payable in full to BofA.

22. By letter dated July 17, 2020 (the "*Turnover Demand*"), BofA, through its counsel, also demanded turnover of the Collateral by the Obligors to BofA. Despite the issuance of the Turnover Demand, the Obligors have not turned over the Collateral to BofA. (A copy of the July 17, 2020 Turnover Demand is annexed to the Amended Verified Complaint as Exhibit "5").

23. Despite the Default Notice and the Turnover Demand, and the commencement of this action, the Obligations remain due and payable to BofA and the Obligors have not turned over the Collateral to BofA.

24. As of December 21, 2022, the principal amount outstanding under the Loan is in the amount of $2,414,835.50 together with interest, fees, and other charges, which are continuing to accrue.

**WHEREFORE,** BofA respectfully requests that this Court grant the Motion in its entirety and for such other and further relief this Court deems appropriate.

_____
MATTHEW J. HYLAND

Sworn and subscribed to before me
this 22nd day of December 2022

_____
NOTARY PUBLIC

AN VO
Notary Public, State of Connecticut
My Commission Expires Apr. 30, 2026