# EXHIBIT "C"

# COLLATERAL ASSIGNMENT OF LICENSE AGREEMENT

THIS COLLATERAL ASSIGNMENT OF LICENSE AGREEMENT (this "Assignment"), dated as of February 28, 2017, is by and between **UNIQUE IMAGING SERVICES LLC**, a New York limited liability company (the "Assignor"), and **BANK OF AMERICA, N.A.**, a national banking association (hereinafter referred to as "Assignee").

## RECITALS

WHEREAS, Assignor has entered into that certain Turnkey License Agreement dated as of March 4, 2005 and attached hereto as "Exhibit A" (as heretofore or hereafter amended, supplemented, modified and/or restated from time to time, the "Agreement"), with DISTINGUISHED DIAGNOSTIC IMAGING, P.C., a New York corporation (the "Licensor");

WHEREAS, by the execution of this Assignment, Assignor desires to induce Assignee to extend certain financial accommodations to Third Avenue Imaging LLC ("Borrower"), a New York limited liability company (the "Loan") pursuant to that certain Note dated of even date herewith, by and between Assignor, Licensor, and Assignee and that certain Loan Agreement dated of even date herewith, by and between Third Avenue Imaging LLC and Assignee (the "Loan Agreement");

WHEREAS, Assignee is unwilling to execute, deliver or perform under the Loan Agreement or other Loan Documents (as defined in the Loan Agreement) unless the Assignor collaterally assigns its rights under the Agreement to Assignee to secure the Loan (as such term is defined in the Loan Agreement).

NOW, THEREFORE, in consideration of the premises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## AGREEMENT

1. As collateral security for all debts, liabilities, or obligations of Borrower now existing or hereafter arising under the Loan Documents, including, without limitation, the Indebtedness, Assignor hereby assigns, transfers and sets over to Assignee all of its rights, but not its obligations, under the Agreement. Assignor hereby grants to Assignee a continuing security interest in and to all of its rights in, under, and pursuant to the Agreement.

2. Assignee shall have no obligation or duty to perform any of the obligations of the Assignor under the Agreement, all of which shall remain the sole and exclusive duty and obligation of the Assignor; provided that if Assignee shall at any time pursuant to Section 3 or 4 hereto exercise any right of Assignor under the Agreement to receive services provided by the Licensor pursuant to the Agreement, then Assignee shall be obligated to pay Licensor the amounts set forth in the Agreement (or such other amounts as may be agreed by and between

Assignee and Licensor) from and after the date of, and during the continuance of, such exercise by Assignee.

3. The rights assigned hereunder include, and are not limited to, any and all rights of enforcement regarding warranties, representations, covenants and indemnities made by Licensor under the Agreement, and all rights, claims or causes of action against Licensor for any breach or violation by Licensor of the provisions of the Agreement; provided, however, that so long as there exists no Event of Default (as defined in the Loan Agreement and Loan Documents), Assignor may enforce all of the rights, claims or causes of action which Assignor may have under the Agreement, including, without limitation, making all decisions and receiving benefits under the Agreement.

4. Upon the occurrence and during the continuance of an Event of Default (as defined in the Loan Agreement and Loan Documents), Assignee may enforce, at the cost and expense of Assignor, either in its own name or in the name of Assignor, all rights of Assignor under the Agreement, including, without limitation, to (i) bring suit to enforce any rights under the Agreement, (ii) compromise or settle any disputed claims as to rights under the Agreement, (iii) give releases or acquittances of rights under the Agreement, and/or (iv) do any and all things necessary, convenient, desirable or proper to fully and completely effectuate the collateral assignment of the rights under the Agreement pursuant hereto.

5. Assignor hereby constitutes and appoints the Assignee or the Assignee's designee as Assignor's attorney-in-fact with full power in Assignor's name, place and stead to, upon the occurrence and during the continuance of an Event of Default, do or accomplish any of the aforementioned undertakings and to execute such documents or instruments in the name or stead of Assignor as may be necessary, convenient, desirable or proper in the Assignee's sole and exclusive discretion. The aforementioned power of attorney shall be a power of attorney coupled with an interest and irrevocable. In the event any action is brought by the Assignee to enforce any rights under the Agreement, Assignor agrees to fully cooperate with and assist the Assignee in the prosecution thereof.

6. Licensor is hereby authorized to recognize Assignee's claims and rights hereunder without investigating any reason for any action taken by Assignee or the validity or the amount of the obligations under the Loan Agreement and Loan Documents or existence of any default thereunder.

7. This Agreement and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New York.

8. This Assignment may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument.

9.   This Assignment shall be binding upon Assignor and Assignor's successors and assigns and shall benefit the Assignee and the Assignee's successors and assigns, provided that (a) Assignor may not assign or transfer its rights or obligations under this Assignment or any interest herein or delegate its duties hereunder, and (b) Assignee shall have the right to assign its rights hereunder and under the Agreement.

10.  This Assignment may only be amended by a writing executed by Assignor and Assignee.

11.  This Assignment constitutes the final and entire agreement with respect to the collateral assignment of rights under the Agreement from the Assignor to the Assignee and any term, covenant or provision not set forth herein shall not be considered a part of this Assignment.

[SIGNATURES FOLLOW ON NEXT PAGE]

IN WITNESS WHEREOF, each of the parties has duly executed this Assignment as of the date first written above.

**ASSIGNOR:**

**UNIQUE IMAGING SERVICES LLC**

By: _____
Joel Reisman, Managing Member

**ASSIGNEE:**

**BANK OF AMERICA, N.A.**

By: _____
William Poulson, Vice President

**Consented to:**

**LICENSOR:**

**DISTINGUISHED DIAGNOSTIC IMAGING, P.C.**

By: _____*[signature]*_____
John Rigley, M.D., President
*RIGNEY*

BOA000160

IN WITNESS WHEREOF, each of the parties has duly executed this Assignment as of the date first written above.

**ASSIGNOR:**

**UNIQUE IMAGING SERVICES LLC**

By: _____
Joel Reisman, Managing Member

**ASSIGNEE:**

**BANK OF AMERICA, N.A.**

By: _____
William Poulson, Vice President

Consented to:

**LICENSOR:**

**DISTINGUISHED DIAGNOSTIC IMAGING, P.C.**

By: _____
John Rigney, M.D., President

# EXHIBIT A
# TURNKEY LICENSE AGREEMENT

[ATTACHED]

## TURNKEY LICENSE AGREEMENT

**TURNKEY LICENSE AGREEMENT** (the "Agreement") made and entered into as of the 4th day of March, 2005, by and between Distinguished Diagnostic Imaging, P.C., a New York professional corporation, having its principal office at 11 Brittany Ct., Chappaqua, New York 10514 ("Licensee") and Unique Imaging Services LLC, a New York corporation having its principal office at 1484 Williamsbridge Road, Bronx, New York 10461 ("Licensor").

**WHEREAS**, Licensor wishes to provide to Licensee a magnetic resonance imaging system and other radiology equipment, which Licensor has acquired and/or leased, as well as ancillary equipment and certain other personal property, including, without limitation, furniture, fixtures, and office equipment (collectively, the "Equipment"); and

**WHEREAS**, Licensor wishes to provide to Licensee the right to use the premises, located at 1484 Williamsbridge Road, Bronx, New York (the "Premises") (hereinafter the Equipment and the Premises shall sometimes collectively be referred to as the "Office"); and

**WHEREAS**, Licensor wishes to furnish certain administrative services on behalf of Licensee; and

**WHEREAS**, the Licensee wishes to obtain the use of the Office and services from the Licensor;

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual covenants, terms, conditions, and agreements hereafter provided, the parties mutually agree as follows:

1. <u>Term</u>. The term of this Agreement shall commence as of March 25, 2004 (the "Commencement Date") and shall continue for five years and renew automatically for terms of five years or unless terminated as provided herein.

2. <u>Resources to be Provided by Licensor and Licensee</u>. The parties hereby agree during the term of this Agreement that each will provide the following services at the Office:

    (a) <u>Equipment</u>. Licensor hereby agrees to provide to Licensee, and Licensee hereby agrees to utilize, the Equipment. The provisions and obligations in this Agreement are subject and subordinate to the provisions and obligations contained in any financing, security, interest, mortgage, lien, or other encumbrance Licensor may, in its reasonable discretion, place upon the Equipment. The Licensee shall use the Equipment only in connection with its magnetic resonance imaging practice and other radiological modalities and shall have no right to alter, repair, augment, or remove this Equipment from the Premises without the prior written consent of Licensor, which approval may be granted or withheld in Licensor sole discretion.

    (b) <u>Premises</u>. Licensor shall furnish to Licensee use of the Premises, together with necessary and appropriate furnishings as determined by Licensor, after consultation with Licensee for the conduct by Licensee of its radiology practice (the "Practice") using the Equipment and for no other purposes. The provisions and obligations contained in this Agreement are subject and subordinate to the provisions and obligations contained in the lease pursuant to which Licensor has leased the Promises. Licensor reserves the right to rearrange the use of the Premises to utilize this space in a more efficient manner. Except as otherwise provided herein, all expenses of maintaining the Office shall be borne by Licensor.

1

BOA000040

(c) <u>Servicing of Equipment</u>: Licensor shall provide service and maintenance under a service contract or other arrangement to service Licensor Equipment with a qualified service contractor. In the event any service, repair, replacement, or other work is required to be made to the Equipment in Licensor's judgment upon of consultation with Licensee which is not covered by the service contract or such other arrangement, the Licensor shall cause such repairs to be made at Licensor's expense.

(d) <u>Utilities</u>: Commencing with the opening of the Office, Licensor shall provide, to the extent possible, necessary utilities and other services including, without limitation, heat, water, gas, electricity, air conditioning, and telephone necessary for the purposes of Licensor to conduct the Practice at the Office. The expense of all utilities and other services shall be passed through to Licensee as part of the monthly fees due and payable.

(e) <u>Arranged Services</u>: Licensor shall arrange, on behalf of Licensee **but at no additional cost to Licensee beyond the Fees set forth in Exhibit A to this Agreement** for third party suppliers to provide laundry, linens, uniforms, janitorial, security, stationery, forms, telephones, postage duplication services, and related equipment, supplies, and services as may be deemed necessary and appropriate for the operation of the Practice and/or the Office.

(f) <u>Personnel</u>: Licensor shall provide all clerical and personnel required in its reasonable judgment upon consultation with Licensee to operate the Office, including without limitation the filing, billing, collection and accounting for all receivables. It is understood and agreed that Licensee shall make the final determination as to the proficiency of all technicians and other, if any, medical personnel.

(g) <u>No Warranties</u>: LICENSOR HEREBY DISCLAIMS ANY REPRESENTATION OR WARRANTY AS TO ANY MATTER WHATSOEVER RELATING TO THE EQUIPMENT AND PREMISES, INCLUDING WITHOUT LIMITATION, THE DESIGN OR CONDITION OF THE EQUIPMENT, THE CONFORMANCE THEREOF TO THE MANUFACTURER'S SPECIFICATIONS AND THE PROVISIONS OF ANY PURCHASE ORDER RELATING THERETO, OF THE FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, AND THE DESIGN, FUNCTION OR WORKMANSHIP OF THE OFFICES. LICENSEE ACKNOWLEDGES THAT IS REPRESENTATIVES HAVE INSPECTED THE EQUIPMENT, AND THE SAME IS ADEQUATE FOR THE LICENSEE'S PURPOSES AS OF THE DATE OF EXECUTION OF THIS AGREEMENT. Licensor hereby assigns to Licensee during the term of this Agreement, its rights, if any, under all manufacturers' warranties relating to the Equipment.

(h) <u>System Upgrade</u>: Licensor shall provide at no cost to Licensee all hardware and software upgrades supplied by the Equipment manufacturers at no additional charge to Licensor. Any hardware upgrades for which the Equipment manufacturers assess a charge to Licensor shall. Upon the mutual agreement of Licensor and Licensee, be acquired by Licensor on Licensee's behalf and the cost and payment terms thereof shall be established upon the mutual agreement of the parties.

(i) <u>Marketing, Advertising, and Public Relations</u>: Licensor shall provide such marketing, advertising, and public relations services as Licensor and Licensee shall mutually agree upon from time to time. Licensee shall have the right to review and approve all promotional plans, programs, contracts, and promotional materials before they are implement and such approval shall not be unreasonably withheld or delayed.

3. <u>Compensation to Licensor</u>

(a) <u>Facilities and Services and Additional Charges</u>: Licensee and Licensor hereby acknowledge that Licensor shall incur substantial costs and expenses in providing the Equipment, Premises, personnel and services, and that such costs and expenses may vary during the term of this Agreement. In consideration therefore, Licensor hereby agrees to pay to Licensee a set fee for the Equipment (the "Equipment Fee"), the license of the Office and for management services (the "Management Services Fee", and collectively, the "Fees") as set forth in Exhibit "A". Licensor shall waive any charge for courtesy and research tests, upon Licensor's prior approval, which may be granted or withheld in Licensor's sole discretion.

(b) <u>Unconditional Payment of Fees</u>: Fees shall be payable to Licensee hereunder without regard to the fees charged by Licensee or the collectability of such fees. Licensee shall alone determine its fees for its services. Additional costs attributable to scans performed by the Licensee for purposes of research and courtesy shall not be taken into account in calculating Fees due hereunder, provided such research and courtesy scans shall be approved by Licensor in advanced in writing, as provided in subsection (a) above.

(c) <u>Payment of Fees</u>:

(i) <u>Bank Account</u>: Licensee shall establish and maintain an account (the "Account") in a bank mutually agreeable to both parties.

(ii) <u>Timing</u>: Licensee shall pay to Licensor the Fees due hereunder within ten (10) days of the first day of each month, except to the extent deferred pursuant to Section 3(d) of this Agreement, provided, however, that any amount required to be paid under this Section 3 if not [paid by Licensee to Licensee when due shall begin to accrue interest beginning fifteen (15) days after its due date at a rate equal to one and one-half percent (1½%) per months or the highest interest rate permitted by law, whichever is less.

(d) <u>No Reduction in Fees</u>: Licensee shall not be entitled to any abatement of any Fees payable under this Agreement to Licensor or to any counterclaim, recoupment, reduction, or offset against such amount, on account of any present or future claim of Licensee against Licensor, the manufacturer or supplier of the Equipment or any other person or entity. Except as otherwise expressly provided herein, the amounts payable under this Agreement to Licensor shall not be affected by reason of any defect in or damage to or loss or destruction of all or part of the Equipment from any cause whatsoever, or by interference with Licensee's use of the Equipment by any persons, or for any other reason whatsoever. The amounts payable to Licensor hereunder shall be paid when due and shall be payable in all events, and neither party shall interfere with such payments.

(e) <u>Security Interest</u>: So long as any amount of Fees, interest thereon, or any other sum which may be due under this Agreement remains unpaid, (i) Licensor shall have a continuing security interest in all accounts (except as otherwise prohibited by law) of Licensee, hereinafter existing or acquired, evidencing any obligation to Licensee for services rendered and all accessions thereto, substitutions therefore and replacements, products and proceeds thereof, and (ii) Licensee shall promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary, or that Licensor may reasonably request, in order to perfect any security interest granted or purported to be granted by Licensee herein or enable Licensor to exercise and enforce its rights and remedies hereunder with respect to the collateral in which a security interest has been granted. Without limiting the generality of the foregoing, Licensee shall

execute and file such security agreements, financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary or desirable, or as Licensor may request, in order to perfect and preserve the security interest granted or purported to be granted hereby by Licensee.

It is expressly understood and agreed that payment of Fees is a corporate obligation of Licensee to Licensor. The foregoing neither creates nor shall be deemed an acknowledgement of any personal liability on the part of any shareholder or employee of Licensee for payment of fees.

(f) <u>Renegotiation</u>: The parties agree that in connection with the potential renewal of this Agreement at the end of three months, the parties shall meet to consider the modification of the Fees and any other charges. The Fees and any other charges shall be modified prospectively only upon the mutual agreement of the parties. In the event that the parties do not agree upon any change to the Fees, either party may terminate this Agreement upon one hundred twenty (120) days written notice to the other party.

The parties agree that in considering changes to the Fees and other charges, the following criteria should be considered; however, such consideration shall not bind the parties:

(i) the capital investment and risk taken by the respective parties in opening the Office and the Practice;

(ii) the capital and operating costs incurred by the respective parties in operating the Office and the Practice;

(iii) providing a return on investment to the parties and their respective owners given the degree of risk inherent in their investment, as well as the labor and effort necessary to develop the project; and

(iv) a presumption shall be given that the original Management Services Fees and other charge structure reflected a good faith and arm's length agreement between the parties and should only be modified if one or more of the above criteria suggests that such change will be fair and equitable as between the parties.

In the event that any regulation, law, or other final decision of a governmental or quasi-governmental entity results in the Fees or any other material term of this Agreement being held to be void or unenforceable in the opinion of counsel then serving Licensor, then the parties agree to enter into good faith negotiations to modify this Agreement. If the partis cannot come to agreement on modifications to the Agreement, either party may terminate this Agreement upon written notice to the other party.

4. <u>Representations, Warranties, and Covenants</u>:

(a) <u>Representations, Warranties, and Covenants of Licensee</u>: Licensor hereby makes the following representations, warranties and covenants to Licensor, each of which is material and is being relied upon by Licensor, and each of which shall be true as of the date hereof and shall continue to be true throughout the term of this Agreement.

(i) <u>Information from the Licensee</u>: Any and all factual information furnished or to be furnished by Licensee to Licensor, including, but not limited to, any financial statements or reports, shall be true and accurate in all material respects as of the date on which such information is furnished.

   (ii)  Imaging Services: Performance and interpretation of imaging tests performed by the Practice at the Office and the care and examination of the patients of the Practice shall be under the supervision of a radiologist employed by the Licensee.

   (iii)  Physicians: The professional services provided at the Office pursuant to this Agreement shall be provided only by shareholders of Licensee or physicians employed by or under contract with Licensee.

   (iv)  Nurses and Technicians: All nurses, if any, and technicians providing professional services at the Office pursuant to this Agreement shall be duly licensed and registered and in good standing to engage in their specialty in the State of New York. Licensee shall make all final decisions concerning hiring and firing of nurses and technicians. Licensee, however, agrees to consult with Licensor on such decisions.

   (v)  No Encumbrances: Licensee acknowledges and agrees that title to the Equipment shall remain with Licensor, subject to the interests of the equipment lessor and any other party to whom Licensor grants a security interest. Licensee agrees to take no action that would adversely affect or encumber Licensor's title or interest in the Equipment.

   (vi)  Radiologist Coverage: Licensee agrees that it shall takes steps necessary to assure that all patient scans and tests shall be read, verbal reports given to referring physicians and reports ready to be transcribed within 24 hours of completion of a scan or tests, provided that all patient scans and tests conducted on a Friday, Saturday, Sunday, or national holiday shall be so processed by the close of business on the following business day.

   (vii)  Assumption of Agreements: Licensee agrees that it shall accept assignments of agreements from the professional corporation previously practicing in the Office with regard to medical records, equipment and services available in the Office as of the date of this Agreement, specifically, the agreements with Lauren Diagnostic Imaging, P.C. and previous P.C.s.

   (viii)  Licensee's Corporate Status: Licensee is a corporation duly organized and validly existing under the laws of the State of New York authorized to engage in the practice of medicine.

   (ix)  Authorization: The execution and delivery of this Agreement, and the performance of this Agreement by the Licensee, have been duly authorized by all necessary corporate action, and this Agreement is legally valid and binding against Licensee in accordance with its terms.

  (b)  Representations and Covenants of Licensor: Licensor hereby makes the following representations, warranties, and covenants to Licensee, each of which is material and is being relied upon by Licensee, and each of which shall be true as of the date hereof and shall continue to be true throughout the term of this Agreement.

   (i)  Licensor's Status: Licensor is a corporation duly organized and validly exiting under the laws of the State of New York.

   (ii)  Authorization: The execution and delivery of this Agreement, and the performance of this Agreement by the Licensor, have been duly authorized by all necessary corporate action, and this Agreement is legally valid and binding against the Licensor in accordance with its terms.

5

BOA000044

(iii)     Information from the Licensor: Any and all factual information furnished or to be furnished by Licensor to Licensee, including, but not limited to, any factual statements or reports, shall be true and accurate in all material respects as of the date on which such information is furnished.

5.  Regulatory Matters:

(a)     Prohibition on Referrals: Licensee and Licensor in the performance of their respective obligations hereunder shall comply with all applicable regulations and laws, and do everything in their power to ensure that the conduct of the Practice of the Office (including this operation of the Equipment) is in compliance with the rules of any accrediting or regulatory body, agency, or authority having jurisdiction over the Practice. The compensation payable to Licensor as set forth in this Agreement has been determined by the parties hereto through good faith and arm's length bargaining to be the fair market value of the services and rights to be rendered or provided by Licensor to Licensee hereunder. No amount paid or advanced hereunder is intended to be, nor shall it be construed to be, directly or indirectly, an inducement or payment for referral of patients by Licensor or Licensee, and any such referral of patients is expressly prohibited hereunder. Any violation of this specific "Practice of the Office" are grounds for immediate termination of this agreement.

(b)     Changes in Law:

(i)     Notwithstanding any other provision of this Agreement, if during the term hereof there is any Change of Law (as defined below) that results, or is likely to result, an Adverse Consequence (as defined below) to either party or both parties (collectively, "Adversely Affected Parties"), an Adversely Affected Party may notify the other party (the "Notified Party") of such Adverse Consequences and this Agreement shall be deemed amended as necessary to avoid such Adverse Consequences, but to the extent legally permissible, preserved the original material intentions, economic, and other terms agreed to by the parties hereto. In the event that it is not legally permissible to preserve the original material intentions, economic terms, and other terms of this Agreement as a consequence of Adverse Consequence, either party may terminate this Agreement by giving ninety (90) days advanced written notice to the other party.

(ii)     As used in this Section 6(b), "Change of Law" shall mean: (a) any new legislation enacted by the Federal or any applicable State government; (b) any new law, rule, regulation, guideline, or new development or interpretation passed, issued, or promulgated by any governmental agency or third party payor; or (c) any order, decree or advisory opinion issued by any judicial or administrative body. As used herein, "Adverse Consequence" shall mean a Change of Law that prohibits, restricts, limits, or otherwise adversely affects any party's rights or obligations hereunder in a material manner or otherwise makes it desirable for any party to this Agreement to restructure the relationship established hereunder because of material legal or financial consequences expected to result from such Change of Law.

6.  Responsibility for Conduct of Practice: Licensee shall assume full responsibility for the professional conduct of the medical practice of the Office, including, but not limited to, the supervision of professional activities, the conduct of educational activities of all employees at the Office in matters relating tot he Practice, the professional services provided at the Practice, and planning and quality assurance activities.

BOA000045

7. <u>Hours</u>: Licensee agrees to initially keep the Office open for medical services between the hours of 8:00 a.m. and 8:00 p.m. on weekdays. Weekend hours and evening hours shall be added as the patient demand for services dictates in the reasonable opinion of Licensor. Licensee agrees that a designated physician shall also be available as needed by telephone at other times in case of an emergency.

8. <u>Termination</u>:

(a) <u>Termination by Licensee</u>: This Agreement may be terminated by Licensee at any time upon written notice to Licensor of such termination after the occurrence of any one of the following events:

(i) Material breach of this Agreement by Licensor with such breach continuing for ten (10) days after written notice to Licensee stating the specific default or breach; provided, however, that if the default is not susceptible of cure within said ten (10) days period, then Licensee shall have ninety (90) days to cure such breach provided that Licensee commences action to cure said breach within the ten (10) day notice period and continues diligently to cure the breach; or

(ii) If either the lease by Licensor of the Premises or the Equipment is terminated for any reason and a suitable substitute is not found within one hundred twenty (120) days; or

(iii) If any event or force majeure as set forth in Section 21 hereof continues for more than one hundred eight (180) consecutive days, provided that a similar turnkey lease arrangement with another group of radiologists is not entered into within 180 days of the date of termination, in which case Licensee shall have the right of first refusal to accept the new turnkey lease; or

(iv) Final action by the state licensing or regulatory agency, hospital, or disciplining of or loss of license or of any medical staff privileges of (A) a physician or radiologist who is a member of Licensee or employed by Licensee, without replacement by the Licensee (if necessary to maintain levels of coverage for the Practice) or (B) the termination of Licensee as a professional corporation, or the suspension of its charter; or

(v) If the Licensee shall apply for or consent to the appointment of a receiver, trustee, or liquidate of Licensee or all or a substantial part of its assets, file a voluntary petition in bankruptcy, or admit in writing its inability to pay its debts as they come due, make a general assignment for the benefit of creditors or take advantage of any insolvency law, or if any order, judgement, or decree shall be entered by any court of competent jurisdiction, on the application of a creditor, adjudicating the Licensee as bankrupt or insolvent or approving of a petition seeking reorganization of Licensee or appointment of a receiver, trustee, or liquidate of Licensee or all or a substantial part of the assets of Licensee.

c. <u>Obligations Upon Termination</u>:

(i) <u>Licensee's Continuing Obligations</u>: The parties hereto agree that, in the event of termination of this Agreement by Licensor pursuant to any clause of this Section 9, all of the obligations of Licensee pursuant to Section 3 hereof shall continue and Licensee shall remain liable to pay to Licensor all such amounts owed to Licensor which have accrued (whether or not invoiced) prior to such termination. The security interest pursuant to Section 3(f) shall remain in full force and effect until all Fees required to be paid by Licensee to Licensor under this Agreement have been paid in full.

BOA000046

(ii) <u>Surrender of Office</u>: Immediately upon termination of this Agreement, Licensee shall surrender the Office to Licensor in good repair, condition, and working order, ordinary wear and tear resulting from proper use thereof excepted. Upon or at any time after any such termination, Licensor may, without further notice, enter upon and re-enter the Office and possess and repossess itself of the Office. Licensee hereby expressly waives, so far as permitted by law, the service of any notice of intention to re-enter for such purpose provided for in any statute or of the institution of legal proceedings to that end.

(iii) <u>Surrender of Equipment Upon Termination</u>: Immediately upon termination of this Agreement, Licensee shall surrender the Equipment to Licensor in good repair, condition, and working order, ordinary wear and tear resulting from proper use there excepted. Upon or at any time after any such termination, Licensor may, without further notice, enter upon and re-enter the Office and possess and repossess itself of the Equipment. Licensee hereby expressly waives, so far as permitted by law, the service of any notice of intention to re-enter for such purpose provided for in any statute or of the institution of legal proceedings to that end.

9. <u>Insurance</u>:

(a) <u>Malpractice Insurance</u>: Licensee shall obtain and maintain at its own expense and professional liability insurance (including malpractice insurance), for itself, and for each shareholder, and each of its medical employees providing services hereunder in the minimum amount of One Million ($1,000,000.00) dollars for each occurrence and Three Million ($3,000,000.00) dollars in the aggregate.

Licensee shall, upon the commencement of occupancy by Licensee of the Office, and from time to time thereafter, furnish appropriate evidence to Licensor of the existence of such insurance, which (if available) shall contain a provision which gives adequate notice of cancellation to Licensor. Licensee and Licensor acknowledge that Licensee's current policies for its employees are on an "occurrence" basis. If Licensee shall in the future maintain such insurance on a "claims made" basis, Licensee agrees that it will acquire or cause its employees (or independent contractor) to acquire, if requested by Licensor an applicable "tail" coverage for all members of Licensee (and Licensee itself) if this Agreement is terminate for any reason. Licensee shall pay or cause its employees (or independent contractors) to pay any premium charges for such tail policy(ies). This provision shall survive the termination of this Agreement.

(b) <u>General Liability and Casualty Insurance</u>: Licensor shall obtain and maintain general liability and casualty insurance for itself (naming Licensee as an additional insured) respecting the Equipment. The amount of the insurance shall be determined in the reasonable judgment of the Licensor. Licensor shall further, at its expense, provide and maintain comprehensive public liability insurance against claims for bodily injury, death, and/or property damage arising out of the use, ownership, possession, operation, or condition of the Office together with such other insurance as may be required by law or reasonably determined by Licensor. All said insurance shall name both Licensor and Licensee as parties insured and shall be in form and amounts and with insurers satisfactory to Licensor, and Licensor shall furnish to Licensee certified copies of certificates of the policies of such insurance and each renewal thereof. Each insurer must agree, by endorsement upon the policy or policies issued by it, that it will give Licensee not less than thirty (30) days written notice before such policy or policies are canceled or altered, and under the loss, theft, or physical damage insurance: (1) that losses shall be payable solely to Licensor, and (2) that no act or omission of Licensee or any of its officers, agents, employees, or representatives shall affect the obligation of the insurer to pay the full amount

of any loss. Licensee hereby irrevocably authorizes Licensor to make, settle, and adjust claims under such policy or policies of physical damage insurance and to endorse the name of Licensee on any check or other item of payment for the proceeds thereof.

    (c)    Licensor's Records: Licensee shall maintain and provide to Licensor an up-to-day personnel file with documentation of the following credentials, and this information will be available to Licensor upon its request: (I) medical license; (ii) medical board certifications; (iii) malpractice insurance; (iv) DEA certification; and (v) no fault/compensation rating.

10. Relationship of the Parties:

    (a)    Independent Contractor: This Agreement is not intended, and shall not be construed, to create a venture, partnership or association as between Licensor and Licensee. Each party is an independent contractor of the other.

    (b)    Licensee - Patient Relationship: The professional relationship between Licensee and its patients shall, at all times during the term of this Agreement, be solely between Licensee (including its professional health care personnel) and its patients. In this regard, the parties agree that:

    (i)    Licensor shall not interfere with the exercise by Licensee of its professional judgment, nor shall Licensor interfere with, control, direct, or supervise Licensee or any individual whom Licensee may employ or contract with in connection with the provision of the professional services of Licensee;

    (ii)    Licensee shall, with respect to the care and treatment of its patients, at all times be solely responsible for supervising all professional and technical personnel performing professional services as its employees, contractors, or under its orders or on its behalf;

    (iii)    Licensee shall be solely responsible for the medical care and treatment of the patients and in no event shall Licensor have any responsibility for the medical services rendered to the patients of Licensee;

    (iv)    Licensee shall establish general operating policies to be carried out by Licensor under this Agreement and shall be accountable for all professional and ethical affairs of the Practice;

    (v)    Except for the switchboard, general receptionist, billing, and other non-medical services that may be provided by Licensor to Licensee, all patient contacts in regard to professional services shall be solely between Licensee and its patients or their physicians, and Licensor shall not interfere with any such contacts nor shall Licensor have any responsibility therefor; and

    (vi)    All decisions regarding which individuals shall utilize the professional services of Licensee shall be the sole responsibility of Licensee.

11. Taxes: Licensee shall not be obligated to pay any federal, state, or local income taxes on or measures by Licensor total gross income.

12. Alterations: Licensee shall not make or permit any changes or alterations to the Equipment or Premises without Licensor's prior written consent, except for alterations or upgrades of the Equipment required by the manufacturer for public safety or for compliance with the manufacturer's published specifications for such Equipment to the extent such alterations or upgrades are not made by Licensor. All accessories, replacements, parts, and substitutions for, or which are added or attached to, the Equipment shall become the property of Licensor and be within the definition of Equipment, and subject to this Agreement.

BOA000048

13. <u>Right to Perform Obligations</u>: If Licensee shall fail to make any payment or perform any act or obligation required of Licensee hereunder, Licensor may (but may not) at any time thereafter make such payment or perform such act or obligation at the expense of Licensee. Any expense so paid or incurred by Licensor shall constitute additional charges hereunder payable to Licensee to Licensor upon demand.

14. <u>Complete and Entire Agreement</u>: This Agreement constitutes the entire agreement between the parties with respect to the subjects covered herein, and there are no representations, warranties, or prior understandings except as expressly set forth herein.

15. <u>Confidentiality</u>:

(a) To the extent Licensor assists Licensee with patient records and information, Licensor shall maintain the confidentiality of all such records and information obtained in the performance of this Agreement, as such records and information related to the names, addresses, or medical information of patients. Licensor shall not release any information with respect to any patient to any third party except as authorized by the Licensee or by law. This subsection 17(a) shall survive the term of this Agreement.

(b) In the course of fulfilling its obligations under this Agreement, Licensee, its shareholders, and employees may be expected to be privy to confidential information concerning the finances, management, structures, marketing, and general operations of the Licensor, all of which is proprietary "trade secret" information belonging to Licensor. Because this proprietary information is valuable to Licensor, except as otherwise required by law, Licensee and its shareholders agree to keep such information strictly confidential, not to disclose such information to any third party without the express written consent of Licensor, except in undertaking its duties at the Office, or except as otherwise required by law and not to utilize such information for any business purpose outside of operations of the Practice. This subsection 17(b) shall survive the term of this Agreement. The damages and relief upon a violation of this provision shall be those available at law or in equity.

(c) In the course of fulfilling its obligations under this Agreement, Licensor, its partners, consultants, and employees (collectively, "Licensor's Participants") may be exposed to confidential information concerning the operations of Licensee, which is proprietary information. Because this proprietary information is valuable to Licensee and its shareholders, Licensor, its partners, consultants, and employees agree to keep such information strictly confidential, and not to utilize such information for any business purpose outside of the operations of the Practice except as otherwise required by law. Licensor agrees that it will have each partner, consultant, and key employee sign a statement, which may be relied upon by Licensee in the form to be prepared by Licensor's counsel in conformance with the Section 17, agreeing to abide by the terms of this subsection 17(c). This subsection 17(c) shall survive the term of this Agreement. The damage and relief upon a violation of this provision shall be those available at law and in equity.

16. <u>Applicable Law</u>: This Agreement shall be construed, interpreted, and governed by and in accordance with the laws of the State of New York.

17. <u>Assignment</u>: This Agreement may not be assigned by Licensee without the prior written consent of Licensor, and any attempt to make any assignment in violation of the provisions hereof shall be null and void. Licensor may assign its rights and obligations hereunder after notice thereof is given to Licensee, provided, however, that Licensee shall have the right to terminate this Agreement

on thirty days (30) prior written notice in the event **of such an assignment. A sale of a majority stock interest or a sale of substantially all of the assets of the Licensor shall be deemed an assignment.**

18. <u>Third Party Rights</u>: The parties hereto do not intend to confer any right or remedies upon any persons other than the parties to this Agreement.

19. <u>Force Majeure</u>: If either party's ability to perform its obligations hereunder is limited or prevented in whole or in part due to acts of God, war, invasion, acts of foreign enemy hostilities (whether ware be declared or not), strikes and/or industrial disputes, delay on the part of the supplier or transportation delay, such party, without liability of any kind, shall be excused, discharged, and released from performance to the extent such performance limited, delayed, or prevented.

20. <u>Waiver of Breach</u>: No waiver of a provision of this Agreement shall be construed as a waiver of any breach of any other provision of this Agreement or of any succeeding breach of any provision of this Agreement.

21. <u>Amendment of Agreement</u>: This Agreement shall not be altered or amended except pursuant to any instrument of writing signed by the parties hereto.

22. <u>Notices</u>: All notices permitted or required under this Agreement shall be sent by Federal Express, Express Mail, or by Certified Mail deposited with the Post Office, return receipt requested, postage pre-paid, and shall be deemed to have been given three (3) days from the date so deposited with this courier. Notices shall be sent to the parties at the following addresses:

>  If to Licensee:
>
>  Distinguished Diagnostic Imaging, P.C.
>  11 Brittany Court
>  Chappaqua, New York 10514
>
>  If to Licensor:
>
>  Unique Imaging Services LLC.
>  1484 Williamsbridge Road
>  Bronx, New York 10461

Any person to whom notice may be given hereunder may from time to time change said address by written notice as provided herein.

25. <u>Miscellaneous</u>:

    (a)    <u>Entire Agreement</u>: This Agreement constitutes the entire agreement among the parties with respect to the matters contained herein. It supersedes any prior agreement or understandings among them with respect to the matters contained herein.

    (b)    <u>Governing Law</u>: This Agreement and the rights of the parties hereunder shall be governed by the interpreted in accordance with the laws of the State of New York.

    (c)    <u>Binding Effect</u>: Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the Licensor, the Licensee, and their legal representatives, administrators, successors, and assigns.

(d) <u>Captions</u>: Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, or extend the scope or intent of this Agreement or any provision hereof.

(e) <u>Counterparts</u>: This Agreement may be executed in several counterparts and all so executed shall constitute one Agreement, binding on all parties hereto.

IN WITNESS WHEREOF, the parties have respectively signed and delivered this Agreement as of the date first above written.

DISTINGUISHED DIAGNOSTIC IMAGING, P.C.

By: *(signature)*

Name: John T. Rigney MD

Title: President

UNIQUE IMAGING SERVICES LLC

By: *(signature)*

Name: Joel Reisman