UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**BANK OF AMERICA, N.A.,**

        *Plaintiff,*

v.

**THIRD AVENUE IMAGING LLC**, a New York limited liability company, **UNIQUE THIRD AVE LLC**, a New York limited liability company, **UNIQUE IMAGING SERVICES LLC**, a New York limited liability company, **DISTINGUISHED DIAGNOSTIC IMAGING, P.C.,** a New York professional corporation, and **JOEL REISMAN,** an individual,

        *Defendants.*

Case No. 21-cv-5201

**STATEMENT OF MATERIAL FACTS SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

---

Plaintiff Bank of America, N.A. ("*BofA*" or the "*Plaintiff*") by and through its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Civil Rule 56.1, submits the following Statement of Material Facts to which BofA contends there are no genuine issues of material facts to be tried:

**The Loan Agreement**

1. On February 28, 2017, BofA entered into a Loan Agreement with defendant Third Avenue Imaging LLC ("*TAI*") (as at any time amended, the "*Loan Agreement*"). [See Declaration of Michael A. Samuels the ("*Samuels Decl*."), Ex. "A" annexed thereto (the "*Amended Verified Complaint*"), p. 3, ¶ 10, Samuels Decl., Ex. "B" annexed thereto (the "*Reisman and LLC Defendants' Answer*"), p. 2, ¶ 10 and Affidavit of Matthew J. Hyland, sworn to on December 22, 2022 (the "*Hyland Aff.*"), p. 2, ¶ 3].

2. Pursuant to the Loan Agreement, BofA agreed to, *inter alia*, make available to defendant TAI a term loan in the principal amount of $5,240,000.00 (the "*Loan*") to be repaid in

1

monthly installments commencing on October 1, 2017 and ending on March 1, 2021, at which time defendant TAI would repay all of the remaining principal balance, plus interest and other charges due thereunder. [See Amended Verified Complaint, Samuels Decl., Ex. "A," p. 3, ¶ 10 and Hyland Aff. p. 2, ¶ 3].

3. The Loan Agreement provides that in the event of a default, BofA could declare TAI in default, stop making any additional credit available to TAI, and require TAI to repay its entire debt immediately. [See Amended Verified Complaint, Samuels Decl., Ex. "A," p. 3, ¶ 11, and annexed thereto as Ex. "1," pp. 9-10, ¶ 8].

4. The Loan Agreement also provides, *inter alia*, that: "Upon the occurrence of any default or after maturity . . . all amounts outstanding under this Agreement, including any unpaid interest, fees, or costs, will at the option of BofA bear interest at a rate which is 6.0 percentage point(s) higher that the rate of interest otherwise provided under this Agreement." [See Amended Verified Complaint, Samuels, Decl., Ex. "A," p. 3, ¶ 12].

**The Closing of the Loan**

5. On February 28, 2017, at the time of the closing of the Loan, all of the defendants, TAI, Unique Third Ave LLC ("***UTA***"), Unique Imaging Services LLC ("***UIS***"), Distinguished Diagnostics Imaging, P.C. ("***DDI***") and Joel Reisman ("***Reisman***, collectively with TAI, UTA, UIS, and DDI, the "***Defendants***" or "***Obligors***") were represented by attorney Stanley A. Schutzman ("***Attorney Schutzman***"). [See Samuels Decl., p. 6-8, ¶¶ 32, 38 and Ex. "J" annexed thereto (the "***Schutzman Transcript***"), at pp. 14:20 through 15:14].

6. On February 28, 2017, at the time of the closing of the Loan, Dr. John T. Rigney ("***Rigney***"), the President and sole shareholder of DDI, was represented by the attorney Russell

Friedman ("***Attorney Friedman***"). [Samuels Decl., p. 7, ¶ 36 and Ex. "I" annexed thereto (the "***First Rigney Transcript***"), at pp. 14:6 through 14:12 and 76:13 through 76:23].

7. On February 28, 2017, BofA received an opinion letter from Attorney Schutzman which made representations for the benefit of BofA and was required by BofA to proceed with the closing of the Loan (the "***Schutzman Opinion Letter***"). [See Hyland Aff., pp.3-4, ¶ 7, Ex. "A" annexed thereto, and Schutzman Transcript, Samuels Decl., Ex. "J," at pp. 12:24 through 14:3 and 17:9 through 17:13].

8. The Schutzman Opinion Letter represented that for each of the Obligors the "authorization necessary or appropriate for the execution of and delivery of and compliance with the Loan Documents have been taken or obtained." [See Schutzman Opinion Letter, Ex. "A" to the Hyland Aff. at p. 2, ¶ 7; and Schutzman Transcript, Samuels Decl., Ex. "J," at pp. 39:12 through 40:8].

9. During the period from February 27, 2017 through February 28, 2017, numerous emails were circulated among Reisman, Rigney, Attorney Schutzman, Attorney Friedman, and BofA's then closing counsel, Ellee Kim ("***Attorney Kim***"), with respect to the closing of the Loan (the "***February 2017 Emails***"). [See Samuels Decl. Ex. "H-1," an email chain produced in discovery by the Reisman and LLC Defendants, and Ex "K," subparts "K-1" through "K-9," relevant documents produced in discovery by Rigney's then counsel and successor firm, The Russell Friedman Law Group, LLP (the "***Friedman Firm Production***")].

**DDI's Authorization for Entry Into and Execution of Security Agreement and Guaranties**

10. The February 2017 Emails, included, among other things, drafts and final versions of: (i) Resolutions Authorizing Execution of Guaranty (Corporation) on behalf of DDI, (ii) a Security Agreement, (iii) an Unconditional and Continuing Guaranty by DDI guaranteeing the

Loan Obligations, (iv) a Collateral Assignment of License Agreement from defendant UIS to BofA, which assigned to BofA UIS' interest in a certain "Turnkey License Agreement" between UIS and DDI, and (v) certain other Loan Documents. [Friedman Firm Production, Samuels Decl., Ex. "K," subparts "K-2" through "K-8"].

11.  The email address JTMR13@aol.com has been stipulated to by DDI's counsel as the personal email address of DDI's President and sole shareholder, Rigney. [Samuels Decl., p. 8, ¶ 40 and Ex. "L" annexed thereto].

12.  On February 28, 2017 at 1:38 p.m. (the "*1:38 p.m. Email*"), BofA's closing counsel, Attorney Kim, sent an email to Attorney Friedman with enclosures including a revised set of final loan documents to be executed by either Reisman, as authorized signatory, or Rigney. [Friedman Firm Response, Samuels Decl., Ex. "K," subpart "K-3," bates-stamped pp. 000128-000182].

13.  The enclosures to Attorney Kim's 1:38 p.m. Email include: (i) a corporate resolution authorizing Reisman as "authorized signatory" of DDI, to enter into, execute, and deliver to BofA a guaranty of any and all obligations of TAI to BofA, and any and all security agreements or other documents as might be authorized by Reisman with respect to the DDI Loan (the "***DDI/TAI Loan Resolution***"); (ii) a corporate resolution authorizing Reisman, as authorized signatory of DDI, to execute in favor of Bank a guaranty of a separate commercial mortgage loan to defendant UTA[1]; and (iii) a consent by DDI to a Collateral Assignment of License Agreement between defendant UIS, as assignor, in favor of BofA, as assignee, relating to a certain Turnkey License Agreement dated March 4, 2005 between defendant UIS and defendant DDI. [Friedman Firm Response, Samuels Decl., Ex. "K," subpart "K-3," bates-stamped pp. 000128-000182].

---

[1] The commercial mortgage loan to defendant UTA is not a subject of this action.

14. On February 28, 2017 at 1:56 p.m., Attorney Friedman sent a responsive email to Attorney Kim:

> "This will confirm that I have approved the subject documents to form for the doctor to sign and return through me to you. I have also spoken to him and he will be signing where requested and providing at least one original as per your request. Thank you for the courtesies and for working with me at the last minute. I am glad we were able to accomplish this just under the wire."

[Friedman Firm Response, Samuels Decl., Ex. "K," Subpart "K-4," bates-stamped p. 000183].

15. On February 28, 2017 at 2:01 p.m. (the "*2:01 p.m. Email*"), Attorney Friedman sent an email to Rigney enclosing the same loan documents exchanged with Attorney Kim, which Attorney Friedman had approved to form for Rigney to sign. [See Samuels Decl., Ex. "K" subparts "K-4," and "K-5," with redactions described in Ex. "K-1," p. 4, as "Communication and Instruction Regarding Documents"].

16. The unredacted portion of the email chain for the 2:01 p.m. Email sent by Attorney Friedman to Rigney [time stamped as 2:00:38 p.m.] states:

> "Dear John,
>
> **Please read over the email below and sign those document signature pages which the bank attorney [Attorney Kim] has referenced below and scan them back to me and I will forward them to her. Then if you could send her back two original copies with the overnight mailer info she sent to you yesterday that would close out what you need to do here. Please only sign those pages that require YOUR signatures**. I had her fix most of the spellings but if you find you named [sic] with an "l" rather than an "n" please just correct it by pen when you sign off. I went over it with her two or three times but for some reason not all of her spelling changes stuck in the drafts she sent to me. **I don't want us to hold up Joel's closing so let's just correct it by hand and be done with it**." (Bold added for emphasis).

278657293v.2

[See Samuels Decl., Ex. "O," the *Unredacted Rigney Documents*" produced by DDI's counsel, at bates-stamped pp. DDI-000001 and DDI-000002].

17. On February 28, 2017 at 2:14 p.m., Attorney Kim sent an email to Attorney Friedman requesting, "Please have him [Rigney] also scan a copy to me as soon as possible so we can receive funding approval." [Friedman Firm Response, Samuels Decl., Ex. "K" subpart "K-6," bates-stamped p. 000274].

18. On February 28, 2017 at 2:19 p.m., Attorney Friedman sent an email to Attorney Kim stating, "I have sent it out to him [Rigney] and asked him [Rigney] to do it and scan it back asap." [Friedman Firm Response, Samuels Decl., Ex. "K" subpart "K-6," bates-stamped p. 000274].

19. On February 28, 2017 at 2:53 p.m. (the "*2:53 p.m. Email*"), Rigney sent an email to Attorney Friedman (in response to Attorney Friedman's 2:01 P.M. Email set forth in ¶ 15 above), which attached six (6) signature pages (including duplicate signature pages for three (3) separate Loan Documents required to be executed by DDI) bearing Rigney's signature, including the Rigney signature page to the final DDI/TAI Loan Resolution. [Friedman Firm Response, Samuels Decl., Ex. "K" subpart "K-7," with redactions described in Ex. "K-1," p. 5, as "Communication and Instruction Regarding Documents," and Samuels Decl., Ex. "M" ("*DDI's Amended Rule 26 Disclosures*"), bates-stamped DDI-000010 through DDI-000013].

20. Rigney testified at deposition that each of the six (6) signature pages attached to his 2:53 p.m. Email bears Rigney's signature. [Samuels Decl., Ex. "N," annexed thereto (the "*Second Rigney Transcript*"), Amended Rule 26 Disclosures, Samuels Decl., Ex. "M" (marked for identification as Exhibit A-2 in the Second Rigney Transcript) at p. 125:14 through 125:24 and pp. 135:3 through 136:10].

21. The unredacted portion of the 2:53 p.m. Email from Rigney to Attorney Friedman states:

> "after all that I [Rigney] sign only a few times. will return docs in entirety to the attorney [BofA closing counsel, Attorney Kim]".

[See Unredacted Rigney Documents, Samuels Decl. Ex. "O," at p. DDI-000001].

22. On February 28, 2017 at 3:14 p.m., Attorney Friedman sent an email to Attorney Kim (the "*3:14 p.m. Email*") stating, "See attached with originals to follow directly from my client [Rigney]." [Friedman Firm Response, Samuels Decl., Ex. "K," subpart "K-8," bates-stamped p. 000306].

23. Rigney testified at deposition that each of the six (6) signature pages enclosed in the 3:14 p.m. Email bears Rigney's signature. [Second Rigney Transcript, Samuels Decl., Ex. "N," at pp. 173:23 through 175:10, Friedman Firm Response, Samuels Decl., Ex. "K," subpart "K-8," bates-stamped pp. 000306-000312 (marked for identification as Exhibit L in Second Rigney Transcript)].

24. The six (6) signature pages attached to Attorney Freidman's 3:14 p.m. Email to Attorney Kim are the same six (6) signature pages returned by Rigney to Attorney Friedman as part of Rigney's enclosures to the 2:53 p.m. Email to Attorney Friedman. [Friedman Firm Response, Samuels Decl., Ex. "K" subpart "K-8," bates-stamped pp. 000306-000312 and Unredacted Rigney Documents, Samuels Decl., Ex. "O," bates-stamped pp. DDI-000001 through DDI-000013 and, specifically, DDI-000008 through DDI-000013].

25. The formatting of the six (6) signature pages enclosed with the 3:14 p.m. Email and the 2:53 p.m. Email are all consistent with the formatting for the final Loan Documents, including the final DDI/TAI Loan Resolution, exchanged between Attorney Kim and Attorney

Friedman in the 1:38 p.m. Email. [Friedman Firm Response, Samuels, Decl., Exs. "K-3" and K-"7," and Samuels Decl., Ex. "O," bates-stamped pp. DDI-000008 through DDI-000013].

26. Reisman testified that it is his signature on the DDI/TAI Loan Resolution in the signature block under his name (the "***Reisman Executed DDI/TAI Loan Resolution***"). [Hyland Aff., ¶ 11, Ex. "B" and Samuels Decl., Ex. "H-2" (the "***Reisman Transcript***"), at pp. 101:25 through 102:6].

27. A fully executed copy of the DDI/TAI Loan Resolution (the "***Fully Executed DDI/TAI Loan Resolution***"), signed by both Rigney and Reisman, was exchanged by Email between current counsel to the Reisman and LLC Defendants (Allyn & Fortuna LLP) and the current counsel for defendant DDI (Paykin Krieg & Adams, LLP) on August 31, 2021. [Friedman Firm Response, Samuels Decl., Ex. "K", subpart "K-9," bates-stamped pp. 000649-000653 and Samuels Decl., Ex. "O," bates-stamped DDI-000020 through DDI-000024].

28. The Fully Executed DDI/TAI Loan Resolution, aside from the formatting layout between the Reisman Executed DDI/TAI Loan Resolution and the Rigney signature page, is substantively the same document. [Friedman Firm Response, Samuels Decl., Ex. "K" at subparts "K-3," "K-8," bates-stamped p. 000311, and "K-9" and Unredacted Rigney Documents, Samuels Decl., Ex. "O," bates-stamped p. DDI-000011].

**The Security Agreement and Guaranties**

29. On February 28, 2017, as collateral security for the prompt and complete payment and performance of all of TAI's then or thereafter-existing debts, obligations, and liabilities to BofA (the "***Obligations***"), Reisman executed on behalf of the defendants TAI, UTA, UIS, DDI, and himself individually (collectively, the "***Obligors***") and delivered to BofA a certain Security Agreement (collectively, as at any time amended, the "***Security Agreement***"). [Amended

Verified Complaint, Samuels Decl., Ex. "A", pp. 3-4, ¶ 13 and Ex. "2" annexed thereto; Hyland Aff., p. 2, ¶ 4, and Reisman and LLC Defendants' Answer, Samuels Decl., Ex. "B," p.3, ¶ 13 (as to Reisman and LLC Defendants)].

30. Reisman was an "authorized signatory" on behalf of DDI to enter into, execute and deliver to BofA the Security Agreement as collateral security for the Loan. [Schutzman Transcript, Samuels Decl., Ex. "J," at pp. 42:19 through 42:24 and Friedman Firm Production, Samuels Decl., Ex. "K" subpart "K-9," the Fully Executed DDI/TAI Loan Resolution, bates-stamped pp. 000651-000653 and Samuels Decl., Ex. "O," bates-stamped DDI-000020 through DDI-000024].

31. Reisman testified that it is his signature on the Security Agreement under the signature blocks for all of the Defendants, including DDI. (Reisman Transcript, Samuels Decl., Ex "H-2," at pp. 71:4 through 71:6 and 72:13 through 73:17 and Amended Verified Complaint (marked for identification as Exhibit 3 on Reisman Transcript), Samuels, Decl., Ex. "A," Ex. "2" annexed thereto, p. 10].

32. Pursuant to the terms of the Security Agreement, the Obligors granted to BofA a first priority blanket security interest upon all of their assets, including the following property (collectively, the "*Collateral*"):

> (a) All accounts, contract rights, chattel paper, instruments, deposit accounts; letter of credit rights, payment intangibles and general intangibles, related thereto; and all returned or repossessed goods which, on sale or lease, resulted in an account;
> (b) All inventory;
> (c) All equipment and fixtures now owned or hereafter acquired;
> (d) All of the deposit accounts with BofA;
> (e) All instruments, chattel paper, documents, certificates of deposit, securities and investment property of every type;
> (f) All general intangibles;
> (g) All negotiable and nonnegotiable documents of title covering any collateral;

9
278657293v.2

  (h) All accessions and attachments and other additions to the collateral;
  (i) All substitutes or replacements for any collateral; and
  (p) All books and records pertaining to any Collateral whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory.

[Amended Verified Complaint, Samuels Decl., Ex. "A", p. 4, ¶ 14 and Ex. "2" annexed thereto and Hyland Aff., p.3, ¶ 5].

  33. On February 28, 2017, as additional collateral security for the repayment of the Obligations, Continuing and Unconditional Guaranties were executed and granted in favor of BofA (as at any time amended, the "***Guaranties,***" together with the Loan Agreement and the Security Agreement and related loan documents, the "***Loan Documents***"), by each of the defendants UTA, UIS, DDI, and Reisman (collectively, the "***Guarantors***"). [Amended Verified Complaint, Samuels Decl. Ex. "A", p. 4, ¶ 15 and Ex. "3" annexed thereto and Hyland Aff., p.3, ¶ 6, and Reisman and LLC Defendants' Answer, Samuels Decl., Ex. "B," p. 3, ¶ 15 (as to Reisman and LLC Defendants)].

  34. Pursuant to the Guaranties, each of the Guarantors absolutely and unconditionally guaranteed the payment to or performance for BofA of the Obligations when due, including any attorneys' fees and costs incurred by BofA in collecting any sums due to it. [Amended Verified Complaint, Samuels Decl., Ex. "A", p. 4, ¶ 15 and Ex. "3" annexed thereto and Hyland Aff., p.3, ¶ 6].

  35. The Guaranties each provide that upon the occurrence of an event of default under the Loan Agreement or any related document, BofA would be entitled to immediately enforce the Guaranties against the Guarantors, including, but not limited to declaring the indebtedness to be immediately due and payable to BofA. [Amended Verified Complaint, Samuels Decl., Ex. "A," p. 5, ¶ 16 and Ex. "3" annexed thereto].

36. Reisman was an "authorized signatory" on behalf of DDI to enter into, execute and deliver DDI's guaranty of the Loan to BofA. [Schutzman Transcript, Samuels Decl., Ex. "J," at pp. 46:20 through 46:22, and Friedman Firm Production, Samuels Decl., Ex. "K," subpart "K-9," and Fully Executed DDI/TAI Loan Resolution, bates-stamped pp. 000651-000653 and Samuels Decl., Ex. "O," bates-stamped DDI-000020 through DDI-000024].

37. Reisman testified that his signature is under the signature block for DDI's guaranty of the Loan to BofA. [Reisman Transcript, Samuels Decl., Ex. "H-2," at p. 78:11 through 78:23 and Amended Verified Complaint, Samuels Decl., Ex. "A," annexed thereto as Ex. "3," p. 9 (ECF, Doc. 63-3, p. 21 of 45)].

38. The Guaranties each provide that upon the occurrence of an event of default under the Loan Agreement or any document executed in connection therewith, BofA would be entitled to immediately enforce the Guaranties against the Guarantors, including, but not limited to declaring the indebtedness to be immediately due and payable to BofA. [Amended Verified Complaint, Samuels Decl., Ex. "A", p. 5, ¶ 16 and Ex. "3" annexed thereto].

39. To secure its interest in the Collateral, and in order to notify others of its interest in and to the Collateral, BofA filed UCC-1 Financing Statements with the Secretary of State of the State of New York on March 6, 2017 under Filing Number: 201703060108445. [Amended Verified Complaint, Samuels Decl., Ex. "A", p. 7, ¶ 33 and Ex. "6" annexed thereto].

**The Loan Relationship between BofA and the Defendants**

40. During the course of the loan relationship between BofA and the Defendants, as required under the Loan Documents, Reisman has routinely provided to BofA, on behalf of all of the Defendants, including the defendant DDI, copies of relevant financial statements, tax returns, and other financial information. [Hyland Aff., p.5, ¶ 14].

41. On February 28, 2017, in addition to the Guaranties and Security Agreement, the defendant UIS, as assignor, executed in favor of BofA, as assignee, a certain Collateral Assignment of License Agreement dated as of February 28, 2017 (the "*Collateral Assignment*"), which attached as Exhibit A thereto, a certain Turnkey License Agreement dated March 4, 2005 between defendant UIS and defendant DDI (the "*DDI Turnkey Agreement*"). [Hyland Aff., p. 5, ¶ 15, Ex. "C" annexed thereto].

42. Pursuant to the terms of the DDI Turnkey Agreement, defendant UIS licensed to defendant DDI the equipment, premises, administrative services, and essential office services for defendant DDI to operate a radiology practice located in the Bronx, NY. [Hyland Aff., p. 6, ¶ 16, Ex. "C" annexed thereto].

43. In return, defendant DDI, pursuant to the fee schedule set forth in Exhibit A of the DDI Turnkey Agreement, agreed to pay UIS monthly fees of $502,000.00. [Hyland Aff., p. 6, ¶ 16, Ex. "C" annexed thereto].

44. The Collateral Assignment and DDI Turnkey Agreement comprise a component of BofA's collateral securing the outstanding Obligations under the Loan Documents. [Hyland Aff., p. 6, ¶ 17].

**The Defaults**

45. Defendant TAI defaulted under the Loan Agreement by failing to make monthly payments due as a result of, *inter alia*, a failure to make monthly payments due and owing to BofA on September 1, 2019, October 1, 2019, and November 1, 2019 (collectively, the "*Defaults*"). [Amended Verified Complaint, Samuels Decl., Ex. "A," pp. 3-4, ¶ 17 and Hyland Aff., p.6, ¶ 18].

46. As a result of the Defaults under the Loan Documents, BofA sent written notice to the Obligors on November 19, 2019 (the "*Default Notice*"), pursuant to which BofA, *inter alia,* advised the Obligors of the Defaults and BofA's election to accelerate the Loan and declare the full amount of the Obligations due under the Loan Documents to be immediately due and payable to BofA. [Amended Verified Complaint, Samuels Decl., Ex. "A", p. 4, ¶ 18 and Ex. "4" annexed thereto and Hyland Aff., p. 6, ¶ 19].

47. Reisman received the Default Notice and does not dispute the default under the Loan Documents. [Reisman Transcript, Samuels Decl., Ex. "H-2," at p. 116:4 through 117:16].

48. BofA subsequently engaged in discussions with the Obligors and their representatives to address the Defaults and the outstanding Obligations due and owing to BofA. [Amended Verified Complaint, Samuels Decl., Ex. "A", p.4, ¶ 20 and Hyland Aff., pp.6-7, ¶ 20 and Reisman Transcript, Samuels Decl., Ex. "H-2," at pp. 117:19 through 118:2].

49. Despite these efforts at a resolution, the Obligors failed to enter into a proposed Forbearance Agreement offered by BofA, made only partial payments to BofA against the full amount of the accelerated Obligations, and the balance of the Obligations under the Loan remain due and payable in full to BofA. [Amended Verified Complaint, Samuels Decl., Ex. "A", p. 4, ¶ 21 and Hyland Aff., p.7, ¶ 21].

50. By letter dated July 17, 2020 (the "*Turnover Demand*"), BofA, through its counsel, also demanded turnover of the Collateral by the Obligors to BofA. Despite the issuance of the Turnover Demand, the Obligors have not turned over the Collateral to BofA. [Amended Verified Complaint, Samuels Decl., Ex. "A", pp. 4-5, ¶ 22 and Ex. "5" annexed thereto, and Hyland Aff., p. 7, ¶ 22].

51. Despite the Default Notice and the Turnover Demand, and the commencement of this action, the Obligations remain due and payable to BofA and the Obligors have not turned over the Collateral to BofA. [Hyland Aff., p.7, ¶ 23].

52. As of December 21, 2022, the principal amount outstanding under the Loan is in the amount of $2,414,835.50 together with interest, fees, and other charges, which are continuing to accrue. [Hyland Aff., p. 7, ¶ 24].

Dated: New York, New York
December 30, 2022

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: /s/Michael Adam Samuels
Michael Adam Samuels
Daniel F. Flores
150 E. 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Direct: (212) 915-5735
Facsimile: (212) 490-3038
Email: michael.samuels@wilsonelser.com
*Attorneys for Plaintiff Bank of America, N.A.*