UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BANK OF AMERICA, N.A.,                 :
               Plaintiff,     :
v.                                  :
                                :
THIRD AVENUE IMAGING LLC, UNIQUE  :
THIRD AVE LLC, UNIQUE IMAGING      :
SERVICES LLC, DISTINGUISHED          :
DIAGNOSTIC IMAGING, P.C., and JOEL  :
REISMAN,                         :
              Defendants.    :
-----------------------------------------------------------------x

**OPINION AND ORDER**

21 CV 5201 (VB)

Briccetti, J.:

      Plaintiff Bank of America, N.A., brings this action against defendants Third Avenue Imaging LLC ("TAI"), Unique Third Ave LLC ("UTA"), Unique Imaging Services LLC ("UIS"), Distinguished Diagnostic Imaging, P.C. ("DDI"), and Joel Reisman, alleging defendants breached their obligations under certain loan, security, and guaranty agreements relating to a loan plaintiff made to defendant TAI.

      Now pending are plaintiff's motions (i) for partial summary judgment on its breach of contract claim against defendant TAI (first claim), foreclosure of security interest claim against all defendants (second claim), and breach of guaranties claim against defendants UTA, UIS, DDI, and Reisman (sixth claim); and (ii) to strike the answer filed by defendants TAI, UTA, UIS (together, the "LLC Defendants"), and Reisman, as well as the answer filed by defendant DDI. (Doc #75).

      For the reasons set forth below, the motion for partial summary judgment is GRANTED IN PART and DENIED IN PART, and the motion to strike is DENIED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332.

**BACKGROUND**

The parties have submitted memoranda of law, affirmations and affidavits with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1,[1] which together reflect the following factual background.

I.      The Loan Documents

On February 28, 2017, plaintiff entered into a loan agreement with TAI (Doc. #63-1 (the "Loan Agreement")), pursuant to which plaintiff agreed to loan TAI $5,240,000, to be repaid in monthly installments commencing October 1, 2017, and ending on March 1, 2021.  The Loan Agreement also requires TAI to pay interest on the loan on April 1, 2017, and on the first day of each month thereafter until all principal has been paid.  TAI obtained the loan to finance its purchase of Third Avenue Open MRI, a diagnostic imaging business.  (Doc. #84 ("Reisman Aff.") ¶ 3).  The Loan Agreement permits plaintiff to declare TAI in default and require TAI to repay the entire debt immediately if TAI fails to make the required payments.  (Loan Agreement ¶¶ 8, 8.1).

Also on February 28, 2017, Reisman executed a security agreement with plaintiff, on behalf of all defendants.[2]  (See Doc. #63-2 (the "Security Agreement")).  Reisman signed the

---

[1]      Plaintiff and DDI filed Rule 56.1 statements.  (See Docs. ##79, 83).  The LLC Defendants and Reisman did not file a Rule 56.1 statement.

[2]      Section 1 of the Security Agreement defines the "Pledgor" as "[t]he undersigned Unique Third Ave LLC, Unique Imaging Services LLC, Distinguished Diagnostic Imaging P.C., Unique Third Ave LLC and Joel Reisman" (emphasis added)—thus, twice listing UTA as a Pledgor, but omitting TAI as a Pledgor.  However, the signature page includes a signature from TAI, and the amended complaint and Rule 56.1 statements appear to assume TAI is a pledgor under the Security Agreement.  (See Doc. #63 ¶ 13, Doc. #79 ¶ 29, Doc. #83 ¶ 29).  Therefore, the Court assumes the duplicative reference in section 1 is a mistake and that TAI is a pledgor under the Security Agreement.

agreement as the sole member of TAI and UTA, the managing member of UIS, an "Authorized Signatory" for DDI, and in his individual capacity.  (Security Agreement at 10).

The Security Agreement granted plaintiff a security interest in each defendant's assets (for example, deposit accounts, contract rights, inventory, and equipment), to secure any debt TAI owed to plaintiff, including debt under the Loan Agreement.  (Security Agreement ¶¶ 1, 2). On March 6, 2017, plaintiff filed UCC-1 financing statements with the Secretary of State of New York regarding the interests granted to it under the Security Agreement.  (Doc. #63-6).

Reisman also executed several "continuing and unconditional guaranty" agreements with plaintiff on behalf of defendants UTA, UIS, DDI, and Reisman (the "Guaranty Defendants"). (Doc. #63-3 (the "Guaranties," and together with the Loan Agreement and the Security Agreement, the "Loan Documents")).  Reisman signed a separate Guaranty for each defendant, and signed the Guaranty between DDI and plaintiff as an "Authorized Signatory" of DDI.  (Id. at ECF 21).[3]  Each Guaranty permits plaintiff to seek payment from the guarantor if TAI defaults on any loans from plaintiff.

## II.   Reisman as Authorized Signatory of DDI

The principal issue here is whether Reisman had authority to sign the Loan Documents on behalf of DDI.

Dr. John Rigney—a non-party—is the sole shareholder, officer, and director of DDI. (Doc. #81 ("Rigney Aff.") ¶ 1).  Rigney attests he is not, and has never been, a member, shareholder, or officer, of TAI, UTA, or UIS, which are controlled by Reisman, and that DDI is not a member of any of those entities.  (Id. ¶ 5).  He further attests Reisman "is not a medical

---

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

doctor" and "has never been a member, shareholder, officer or director of DDI," which is "a

professional corporation organized under the laws of the state of New York." (Id. ¶¶ 2, 3).

Rigney claims he "never authorized Joel Reisman to execute a guaranty of the loan," and repeats

that he "never intentionally authorized Reisman to guaranty the Loan, or executed resolutions to

such effect." (Id. ¶¶ 10, 11). Rigney also claims "neither [he] nor DDI had any interest in the

proceeds of the Loan or the assets procured by the Loan, or TAI and therefore DDI had no

reason to guaranty the Loan." (Id. ¶ 10).

During discovery in this action, counsel for the LLC Defendants and Reisman sent DDI's

litigation counsel a copy of "the resolution signed by our clients." (Doc. #76-20 at ECF 2). The

document, titled "Resolutions Authorizing Execution of Guaranty (Corporation)," and dated

February 28, 2017 (Doc. #76-20 at ECF 4–6 (the "Resolutions")), provides DDI would

"guarantee any and all obligations of Borrower [TAI] to Bank [plaintiff] in accordance with a

guaranty (the 'Guaranty') in such form and subject to such terms, conditions, and limitations as

may be agreed upon by the Authorized Officers," and "that Joel Reisman, the Authorized

Signatory of the Corporation [DDI], acting Individually (the 'Authorized Officers'), is hereby

authorized and directed, in the name of the Corporation, to execute and deliver to Bank . . . the

Guaranty." (Id.). The Resolutions further provide "the Authorized Officers are hereby

authorized and directed as security for the Guaranty to grant in favor of Bank a security interest

in or lien on any real or personal property belonging to or under the control of the Corporation,

and to execute and deliver to Bank any and all security agreements." (Id.).

The first page of the Resolutions ends with the following incomplete sentence:

I, John Rigley [sic], M.D., President of Distinguished Diagnostic Imaging, P.C., . . .
(the "Corporation"), hereby certify that the foregoing is a full, true and correct copy
of resolutions of the Board of Directors of the Corporation, duly and regularly
adopted by the Board of Directors of the Corporation . . . at a meeting at which a

quorum of the Board of Directors of the Corporation was present and the requisite
number of such directors voted in favor of said resolutions, or by the

(Resolutions at ECF 5).

Two signature pages follow the first page of the Resolutions.  The first signature page,
signed by Reisman as an "Authorized Signatory," begins with the words: "unanimous consent in
writing of all members of the Board of Directors of the Corporation to the adoption of said
resolutions."  (Resolutions at ECF 5).  The second signature page, signed by Rigney, begins with
the words:  "Corporation was present and the requisite number of such directors voted in favor of
said resolutions, or by the unanimous consent in writing of all members of the Board of Directors
of the Corporation to the adoption of said resolutions."  (Id. at ECF 6).  Therefore, the Reisman
signature page and the Rigney signature page are different, and the text on the Rigney signature
page is not a logical continuation of the unfinished sentence on the first page of the Resolutions.

III.    Relationship Between Reisman and DDI

In support of its argument that Reisman was authorized to sign the Loan Documents on
behalf of DDI, plaintiff submits evidence of a long-term business relationship between Reisman
and DDI, both before and after the closing date.  DDI disputes some of this evidence.

First, with respect to legal representation, plaintiff contends the LLC Defendants,
Reisman, and DDI were all represented by attorney Stanley Schutzman, Esq., when the Loan
Documents and Resolutions were executed.  In support, plaintiff notes Schutzman testified
during his deposition that Reisman engaged him to represent the LLC Defendants and DDI.  (See
Doc. #76-11 ("Schutzman Tr.") at 14–15).[4]  Plaintiff also points to an opinion letter, executed by
Schutzman and provided to plaintiff on the closing date, which states Schutzman's firm "has

---

[4]    Citations to "Tr. at _" refer to the page number at the top right-hand corner of each
transcript page.

acted as legal counsel to" TAI, DDI, UTA, UIS, and Reisman, and refers to all five collectively as "Obligors" with respect to plaintiff's $5,240,000 loan to TAI.  (Doc. #77-1 (the "Opinion Letter") at ECF 2).  The letter expresses the firm's opinion that:

> [e]ach Obligor has full power, authority, and legal right to execute, deliver, and comply with each of the Loan Documents executed by them, and all actions of each Obligor and other authorizations necessary or appropriate for the execution and delivery of and compliance with the Loan Documents have been taken or obtained, and the Loan Documents constitute the valid and legally binding obligations of Obligors enforceable against them in accordance with their respective terms.

(Id. at ECF 5).  The Opinion Letter notes that, in rendering its opinion, the firm assumed "the authenticity of all items submitted to us as originals" and "the conformity with originals of all items submitted to us as copies."  (Id. at ECF 3).

Conversely, Rigney contends Schutzman never represented DDI.  He attests another attorney, Russell Friedman, Esq., who died before plaintiff commenced this action, represented DDI and Rigney at all relevant times.  (Rigney Aff. ¶¶ 7, 8).  Rigney further attests he and DDI never "entered into a retainer agreement with Schutzman much less paid him any monies."  (Id. ¶ 9).  Similarly, Schutzman testified he never signed a retainer agreement with Rigney, and he solely communicated with Rigney's attorney, Friedman.  (Schutzman Tr. at 54, 56).  Schutzman further testified he issued the Opinion Letter only after plaintiff's counsel showed him a copy of a corporate resolution authorizing Reisman, the person Schutzman "was dealing with," to act for DDI.  (Schutzman Tr. at 54–55, 57–58).

Plaintiff also submits evidence that Reisman was involved in DDI's business operations. For example, Matthew Hyland, a Senior Vice President at plaintiff Bank of America, attests "Reisman has routinely provided to BofA, on behalf of all of the Defendants, including the defendant DDI, copies of relevant financial statements, tax returns, and other financial information."  (Doc. #77 ("Hyland Aff.") ¶ 14).  Hyland also attests that defendant UIS—which

is controlled by Reisman—licensed to DDI equipment, premises, administrative services, and essential office services for DDI to operate a radiology practice in the Bronx, pursuant to a license agreement dated March 4, 2005.  (Id. ¶¶ 15, 16).  And an email Friedman sent to Reisman on February 28, 2017, indicates Reisman was serving as DDI's "Practice Administrator" at the time.  (Doc. #76-14 at ECF 4).

IV.   Closing of the Loan Documents

On February 27 and 28, 2017, the day before and the day of the closing, Friedman exchanged several emails with Reisman and plaintiff's counsel at the time, Ellee Kim.  Kim asked Reisman and Friedman to have Rigney execute corporate resolutions authorizing Reisman to sign on behalf of DDI, and then send her scanned copies and the originals of the signed resolutions.  (See Doc. #76-13 at ECF 3; Doc. #76-14 at ECF 2).  Attached to one such email, sent from Kim to Russell on February 28, 2017, at 1:38 p.m., was a version of the Resolutions that appended a blank signature page similar to the one Rigney ultimately signed.  (Doc. #76-14 at ECF 17–18).  In response, Friedman "confirm[ed] that I have approved the subject documents to form for the doctor to sign and return through me to you.  I have also spoken to him and he will be signing where requested and providing at least one original."  (Doc. #76-15 at ECF 2).

Later that day, Friedman emailed Kim a PDF consisting of six signature pages, signed by Rigney, and stated "originals [would] follow directly from my client."  (Doc. #76-19 at ECF 2). The PDF does not include the page(s) preceding each signature page.  However, two signature pages appear to pertain to an "Assignment" from UIS to plaintiff, to which DDI consented as "Licensor" (id. at ECF 3, 4), and the other four appear to pertain to corporate resolutions.  (Id. at ECF 5–8).  The signature pages for the resolutions do not identify the relevant "Corporation" (although Rigney signed as its "President"), and it is unclear whether these pages correspond to

four separate sets of resolutions or represent four copies of a single document.  (Id.)  Rigney

confirmed during his deposition that his actual signature appears on each of these signature

pages.  (Doc. #76-23 ("Rigney Tr.") at 174–75).

V.   Default by the LLC Defendants and Reisman

TAI failed to make the required monthly payments on September 1, 2019, October 1,

2019, and November 1, 2019.  (Hyland Aff. ¶ 18).  By written notice dated November 19, 2019,

plaintiff advised TAI that this nonpayment comprised a default under the Loan Documents, that

plaintiff elected to accelerate the loan, and demanded payment in full by November 29, 2019.

(Doc. #63-4 ("Default Notice") at 1–2).  The Default Notice indicates it was sent by overnight

delivery and regular mail to DDI (id. at 3), but Rigney denies that he (or DDI) received it.

(Rigney Aff. ¶ 12).

Plaintiff, the LLC Defendants, and Reisman subsequently engaged in discussions

regarding the default, including a forbearance agreement offered by plaintiff.  (Hyland Aff.

¶¶ 20, 21).  However, the parties did not ultimately enter into the proposed forbearance

agreement, and the LLC Defendants and Reisman made only partial payments toward the

outstanding debt.  Rigney attests DDI was not involved in these negotiations.  (Rigney Aff.

¶ 13).

On July 17, 2020, plaintiff sent a letter to TAI demanding turnover of the collateral under

the Security Agreement by July 24, 2020.  (Doc. #63-5 (the "Turnover Demand")).  The

Turnover Demand indicates it was sent via overnight delivery and regular mail to DDI (id. at 3),

but Rigney denies that he (or DDI) received it.  (Rigney Aff. ¶ 14).

As of December 21, 2022, the principal amount outstanding under the Loan Agreement

was $2,414,835.50, plus interest, fees, and other charges, and defendants had not turned over the

collateral to plaintiff.  (Hyland Aff. ¶¶ 23, 24).

Reisman submits an affirmation[5] in which he does not dispute that TAI defaulted. Instead, he "respectfully request[s] that [the Court] abstain from rendering a decision on Plaintiff's motion for summary judgment against [the LLC Defendants and Reisman] so that the[se] Defendants can have an opportunity to finally resolve this loan, as I have intended since 2019."  (Reisman Aff. ¶ 2).

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[6]

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.

---

[5]     In his affirmation, Reisman states "[d]ue to the tenets of Orthodox Judaism, I am unable to swear an oath" and so "[i]n lieu of a sworn Affidavit, I submit the herein Affirmation in Opposition to" plaintiff's motion for summary judgment.  (Reisman Aff. ¶ 1).

[6]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).  Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.      Motion for Partial Summary Judgment

      Plaintiff moves for summary judgment on its breach of contract claim against TAI, its foreclosure of security interest claim against all defendants, and its breach of guaranty claim against the Guaranty Defendants.[7]

      A.      Breach of Contract Claim

      Plaintiff argues it is entitled to summary judgment on its breach of contract claim because it is undisputed TAI entered into, and defaulted on its obligation to make payments under, the Loan Agreement.

      The Court agrees.

      "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).[8]

      Here, the undisputed evidence shows plaintiff and TAI entered into the Loan Agreement, plaintiff disbursed the loan proceeds to TAI, and TAI failed to make the payments due to plaintiff under the Loan Agreement.  Because of TAI's failure to pay, plaintiff has proven general damages in the amount of the unpaid principal under the Loan Agreement, plus any applicable interest and fees.  See Biotronik A.G. v. Conor Medsystems Ireland, Ltd., 22 N.Y.3d 799, 805 (2014) ("General damages are the natural and probable consequence of the breach of a contract.  They include money that the breaching party agreed to pay under the contract.").

---

[7]      Plaintiff does not move for summary judgment on its claims for replevin, conversion, or unjust enrichment.

[8]      The Loan Agreement provides that it is governed by New York Law.  (Loan Agreement ¶ 9.2).

TAI does not dispute that it breached its obligations under the Loan Agreement—it merely asks for "any additional time that [the Court] can provide in order to permit [refinancing] discussions to proceed in the hopes that the parties can find a mutually-agreeable solution." (Reisman Aff. ¶ 14). Although the Court appreciates TAI's openness to settlement, the breaching party's desire to settle does not create a genuine issue of material fact.

Accordingly, summary judgment is granted to plaintiff on its breach of contract claim against TAI.

B.      Foreclosure of Security Interest Claim

Plaintiff argues it is entitled to summary judgment on its foreclosure of security interest claim against all defendants because TAI's default under the Loan Agreement entitles plaintiff to take possession of, and dispose of, the collateral under the Security Agreement.

The Court agrees except with respect to defendant DDI.

To establish a "prima facie entitlement to summary judgment" on a claim to foreclose a security interest, a plaintiff must demonstrate the parties entered into a security agreement and that the defendant defaulted on its obligations. Norman Realty & Constr. Corp. v. 151 East 170th Lender LLC, 215 A.D.3d 424, 424 (1st Dep't 2023).[9]

Under the New York Uniform Commercial Code, "[a] security interest is enforceable against the debtor and third parties with respect to collateral only if . . . the debtor has authenticated a security agreement that provides a description of the collateral." N.Y. U.C.C. § 9-203(b)(3)(A); see also N.Y. U.C.C. § 9-102(a)(7) ("Authenticate" means . . . to sign."). "[A]fter a borrower defaults, a secured party may reduce a claim to judgment, foreclose, or

---

[9]      The Security Agreement provides it is governed by New York law. (Security Agreement ¶ 13(d)).

otherwise enforce the claim or security interest by any available judicial procedure," including by "tak[ing] possession of the collateral." Bank of Am., N.A. v. City View Blinds of N.Y., Inc., 2022 WL 580764, at *5 (S.D.N.Y. Feb. 25, 2022) (quoting N.Y. U.C.C. § 9-601(a)(1), (b)(1)– (2)). "Additionally, New York U.C.C. § 9-610 authorizes a secured party to dispose of its collateral, including by selling it, upon a default by the debtor." Id. (citing N.Y. U.C.C. § 9-610(a)).

Here, plaintiff has produced the Security Agreement signed by Reisman, the UCC-1 financing statements demonstrating plaintiff perfected its security interest in the collateral, and evidence that TAI defaulted under the Loan Agreement. Moreover, it is undisputed that Reisman had authority to enter into the Security Agreement on behalf of himself and the LLC Defendants. Therefore, plaintiff is entitled to summary judgment on its foreclosure of security interest claim against TAI, UTA, UIS, and Reisman.

However, DDI produced evidence raising a genuine issue of material fact regarding whether Reisman was authorized to execute the Security Agreement on DDI's behalf.[10] Significantly, the printed text on Rigney's signature page does not logically follow the incomplete sentence that ends the prior page of the Resolutions, nor does it match the text on Reisman's page. Rigney also submitted four, nearly identical signature pages appearing to pertain to corporate resolutions in his executed signature packet. As such, the Rigney signature page may come from a different corporate resolution. Moreover, Rigney attests he never signed

---

[10]     In its reply memorandum, plaintiff argues, for the first time, that Reisman had apparent authority to sign the Security Agreement and Guaranty on behalf of DDI. The Court does not consider this argument. See Manon v. Pons, 131 F. Supp. 3d 219, 238–39 (S.D.N.Y. 2015) ("[A]rguments may not be made for the first time in a reply brief.") (quoting Simpson v. City of New York, 793 F.3d 259, 264 (2d Cir. 2015))).

corporate resolutions authorizing Reisman to act as DDI's signatory.  Rigney also denies

Schutzman, who wrote the Opinion Letter asserting DDI had obtained all "authorizations

necessary . . . for the execution of" the Loan Documents (Opinion Letter at ECF 2), represented

DDI, and Schutzman testified he never entered into a retainer agreement with DDI, nor spoke

with Rigney.  Accordingly, DDI has raised a genuine issue of material fact whether DDI entered

into the Security Agreement, making summary judgment against DDI on this claim

inappropriate.

      Accordingly, summary judgment is granted to plaintiff on its foreclosure of security

interest claim as against the TAI, UTA, UIS, and Reisman, but is denied as against DDI.

      C.      <u>Breach of Guaranties Claim</u>

      Finally, plaintiff argues it is entitled to summary judgment on its breach of guaranties

claim because TAI defaulted under the Loan Agreement and each Guaranty Defendant agreed to

guarantee TAI's performance.

      The Court agrees except with respect to defendant DDI.

      "A guaranty is a promise to fulfill the obligations of another party, and is subject to the

ordinary principles of contract construction."  <u>Cooperatieve Centrale Raiffeisen-Boerenleenbank,</u>

<u>B.A. v. Navarro</u>, 25 N.Y.3d 485, 492 (2015).[11]  Thus, "[t]o meet its prima facie burden on its

summary judgment motion, [plaintiff] must prove the existence of the guaranty, the underlying

debt and the guarantor's failure to perform under the guaranty."  <u>Id</u>.  "Thereafter, the burden

shifts to the defendant to establish, by admissible evidence, the existence of a triable issue with

respect to a bona fide defense."  <u>Id</u>.

---

[11]      Each Guaranty provides that it is governed by New York law.  (<u>See, e.g.</u>, Guaranties at
ECF 19).

Here, it is undisputed that UTA, UIS, and Reisman entered into the Guaranties, that TAI is in default under the Loan Agreement, and that some amount of the outstanding principal remains unpaid.  Summary judgment is thus appropriate on plaintiff's breach of guaranty claim against UTA, UIS, and Reisman.

However, for the reasons discussed above regarding the Security Agreement, a reasonable jury could conclude Reisman lacked authority to execute the Guaranty on DDI's behalf.  Because there is a genuine dispute of fact as to whether DDI entered into the Guaranty, summary judgment against DDI on this claim is inappropriate.

Accordingly, summary judgment is granted to plaintiff on its breach of guaranties claim against defendants UTA, UIS, and Reisman, but is denied as against DDI.

III.    Motion to Strike Defendants' Answers

Plaintiff argues the answers filed by (i) the LLC Defendants and Reisman (Doc. #66 (the "Reisman Answer")) and (ii) DDI (Doc. #65 (the "DDI Answer")) should be stricken because the affirmative defenses asserted are conclusory, unsubstantiated by the evidence, and meritless.

The Court disagrees.

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A Rule 12(f) motion to strike must be made "within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f)(2).

"A movant under Rule 12(f) must show that:  (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." Holland v. Lions Gate Ent. Corp., 2023 WL 3554447, at *1 (S.D.N.Y. Apr. 12, 2023).  Likewise,

"[t]o successfully strike an affirmative defense, a plaintiff must show that (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." Abdou v. Walker, 2022 WL 3334700, at *5 (S.D.N.Y. Aug. 12, 2022).  "Motions to strike under Rule 12(f) are generally disfavored and granted only if there is a strong reason to do so." Holland v. Lions Gate Ent. Corp., 2023 WL 3554447, at *1.

Plaintiff's motion to strike—made more than five months after each answer was served and filed—is untimely and is denied on that basis alone.  See Handverger v. City of Winooski, 2013 WL 12177040, at *3 (D. Vt. Oct. 22, 2013) ("While the court has discretion to consider an otherwise untimely Rule 12(f) motion . . . . [c]ourts generally have refused to exercise their discretion to strike portions of the pleadings on [their] own when the moving party's delay in filing the motion to strike was lengthy.").  In any event, here, plaintiff has failed to show it would be prejudiced by inclusion of the defenses. See Abdou v. Walker, 2022 WL 3334700, at *5.[12]

Accordingly, the motion to strike defendants' answers is denied.

---

[12]    The Reisman Answer asserts the following affirmative defenses:  the complaint fails to state a claim, defendants are not in default under the Loan Documents, and plaintiff cannot accelerate the remaining obligations under the Loan Documents.  The DDI Answer asserts the following affirmative defenses:  the complaint fails to state a claim, plaintiff's claims are barred by the statute of frauds, plaintiff's claims are barred by estoppel, laches, and/or waiver, and DDI reserves its right to amend its answer, including to assert counterclaims.

**CONCLUSION**

The motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

Summary judgment is granted to plaintiff as to the breach of contract claim against defendant TAI, the foreclosure of security interest claim against defendants TAI, UTA, UIS, and Reisman, and the breach of guaranty claim against defendants UTA, UIS, and Reisman.

Summary judgment is denied as to the foreclosure of security interest claim and the breach of guaranty claim against DDI.

The motion to strike defendants' answers is DENIED.

The Court will conduct a case management conference on **June 29, 2023, at 3:30 p.m.,** at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what efforts they have made and will continue make to settle this case.  The conference will be held in person at the White Plains courthouse, Courtroom 620.

The Clerk is instructed to terminate the motion (Doc. #75).

Dated: June 5, 2023
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge